No. 71–5580. GONZALES *v.* BETO, CORRECTIONS DIRECTOR. C. A. 5th Cir. Motion for leave to proceed *in forma pauperis* and certiorari granted. Judgment reversed and case remanded. *Turner* v. *Louisiana,* 379 U. S. 466.

MR. JUSTICE STEWART, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, concurring in the judgment.

A gas station attendant was shot to death during the course of a holdup in Dawson County, Texas, on a February night in 1956. Five years later the petitioner was arrested, tried, and convicted of the crime. The prosecution's case against the petitioner rested almost totally upon the testimony of the county sheriff. The sheriff testified to the authenticity of a written confession that he said had been dictated and signed with an "X" by the petitioner. The witness insisted on cross-examination that, although the petitioner could not read or write, and had some difficulty speaking and understanding English, he had indeed dictated the rather complex confession and had understood what he was signing. Only one other witness, who corroborated a part of the sheriff's testimony, connected the petitioner with the crime.

The county sheriff, however, played a dual role at the trial, for he was not only the key prosecution witness

against the petitioner, but the bailiff of the jury as well. In the latter capacity, he was responsible for the care and protection of the jurors. He had, therefore, substantial and continuing contact with and authority over them during the entire course of the trial. On several occasions, he conducted them in and out of the courtroom on the instructions of the judge. Once, the judge even asked him to step down from the witness stand, where he was undergoing cross-examination, in order to retire the jury.[1] In his role as bailiff, the sheriff walked with the jurors to a local restaurant for lunch, conversing with them on the way. At the restaurant, he ate with them in a private room, where the conversations continued. Late in the afternoon, while the jurors were deliberating in the case that turned so largely on their assessment of the sheriff's credibility, they asked the sheriff, as bailiff, to bring them soft drinks in the jury room, which he did.

The petitioner has now sought federal habeas corpus relief, claiming that the sheriff's dual role as key prosecution witness and jury bailiff and his substantial association with the jurors during the trial infringed the petitioner's right to due process of law under the doctrine of *Turner* v. *Louisiana,* 379 U. S. 466. In *Turner,* two deputy sheriffs served identical dual roles as prosecution witnesses and jury custodians, testifying as to the circum-

---

[1] This occurred immediately after defense counsel had emphasized his challenge to the sheriff's credibility:

"MR. BASDEN [defense counsel]: I have no further questions to ask this witness [the sheriff], and I will pass him. If this statement [the confession] is introduced in evidence, I would like to put on testimony to impeach the testimony given by this witness to assist the Court in understanding the defendant's ability to speak the English language, in regard to giving a statement to these Peace Officers, and I would like to make this request, to be allowed to call these witnesses of mine at this time tò testify.

"THE COURT: Mr. Sheriff, will you retire the jury for a few minutes?"

stances of the defendant's confession while shepherding the jurors through a three-day trial. During the trial, the jury was sequestered and was in "close and continual association" with the deputies. *Id.,* at 468. "The deputies ate with them, conversed with them, and did errands for them." *Ibid.* This Court held that the prejudice inherent in that situation violated the defendant's due process right to a fair trial before an impartial jury.

After the evidentiary hearing in the present case, the District Court denied the petitioner's habeas corpus application. A divided Court of Appeals affirmed the denial. 445 F. 2d 1202. Both courts held that the particular facts of the petitioner's case distinguished it from *Turner,* since the association of the key prosecution witness with the jurors as their custodian during the petitioner's one-day trial was somewhat less extensive and somewhat less intense than the association of the deputy sheriffs with the sequestered jury during the three-day trial in *Turner.*[2]

*Turner,* of course, did not set down a rigid, *per se* rule automatically requiring the reversal of any conviction whenever any Government witness comes into any contact with the jury. The Court's opinion specifically indicated that association with the jury by a witness whose testimony was "confined to some uncontroverted or merely formal aspect of the case for the prosecution" would hardly present a constitutional problem. *Id.,* at 473. And it indicated that a mere "brief encounter," by chance, with the jury would not generally contravene

---

[2] Neither the District Court nor the Court of Appeals questioned that the county sheriff whose credibility was at issue had been a key witness for the prosecution. Indeed, the District Court's unreported opinion specifically found, as summarized by the Court of Appeals, that "[t]he sheriff was an essential witness for the prosecution in that his testimony, although disputed, established the voluntary character of the confession upon which Gonzales was convicted." 445 F. 2d, at 1205.

due process principles. *Ibid.* For, as pointed out in dissent today, certain chance contacts between witnesses and jury members, while passing in the hall or crowded together in an elevator, are often inevitable.

But the Court in *Turner* was not dealing with just any prosecution witness coming into any contact with the jury. Rather, it was dealing with crucial witnesses against the defendant who associated with the jurors as their official guardians throughout the trial. *Turner* established the simple principle that association of that particular sort cannot be permitted if criminal defendants are to be afforded due process of law.

At the heart of our holding in *Turner* lay a recognition of the great prejudice inherent in the dual role of jury bailiff and key prosecution witness:

> "It would have undermined the basic guarantees of trial by jury to permit this kind of an association between the jurors and two key prosecution witnesses who were *not* deputy sheriffs. But the role that Simmons and Rispone played as deputies made the association even more prejudicial. For the relationship was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial." *Id.*, at 474.[3]

Our adversary system of criminal justice demands that the respective roles of prosecution and defense and the neutral role of the court be kept separate and distinct in a criminal trial. When a key witness against a defendant doubles as the officer of the court specifically charged with the care and protection of the jurors, associating with them on both a personal and an official basis while

---

[3] In a later case drawing upon the doctrine of *Turner*, the Court emphasized that "the official character of the bailiff—as an officer of the court as well as the State—beyond question carries great weight with a jury . . . ." *Parker* v. *Gladden*, 385 U. S. 363, 365.

1056

simultaneously testifying for the prosecution, the adversary system of justice is perverted.

Naturally, the extent and intensity of a bailiff's association with a jury will vary from case to case. But, in the petitioner's case, I cannot say that it was by any means *de minimis*. Although the trial lasted only one day and the jury was not sequestered with the county sheriff, the association between the jurors and the witness-bailiff was an extended one, and the duality of the witness-bailiff's roles was inevitably driven home to the jury. And, although the witness-bailiff may not have spoken to the jurors about the case itself outside the courtroom, *Turner* makes clear that even if he "never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this association throughout the trial between the jurors and [this] key witness for the prosecution." 379 U. S., at 473. It is enough to bring the petitioner's case within the four corners of *Turner* that the key witness for the prosecution also served as the guardian of the jury, associating extensively with the jurors during the trial.[4]

MR. JUSTICE REHNQUIST, whom MR. JUSTICE WHITE joins, dissenting.

In order to reverse summarily the state court conviction of a confessed murderer, the majority in this case chooses to convert a salutary principle into a rigid rule

---

[4] The petitioner's trial was held before our decision in *Turner*, but *Turner*, of course, stated no new constitutional doctrine. Its principle "went to the fairness of the trial—the very integrity of the fact-finding process." *Linkletter* v. *Walker*, 381 U. S. 618, 639. It overruled no line of decisions on which the State might have justifiably relied. To the contrary, it simply applied established case law holding that due process of law requires an impartial jury. *Turner* v. *Louisiana*, 379 U. S. 466, 471–472.

unjustified by considerations of constitutional policy or fairness. I must respectfully dissent.

Petitioner Rudy Gonzales was convicted of murder after a trial by jury in the District Court of Dawson County, Texas. The case was not a complicated one. The State's evidence consisted primarily of petitioner's signed and witnessed confession, admitting his complicity in an armed robbery and murder of the proprietor of a local service station. The evidence showed that the police had warned petitioner of his rights before he made this confession, and there is no suggestion that the statement was in any way coerced.

In cross-examining the sheriff who obtained the confession, petitioner's counsel questioned whether petitioner's command of the English language had been sufficient for him to understand what occurred at the time of the confession. The sheriff responded that while petitioner had not spoken perfect English, he had been able to comprehend and answer sensibly all the sheriff's questions. The defense presented no evidence to the jury, which found petitioner guilty within 10 minutes after the close of the case.

Petitioner's sole claim to habeas relief is that he was deprived of due process of law because the sheriff of Dawson County at that time also served as bailiff of the jury. In order to sustain this claim, petitioner seeks to have this Court extend the doctrine of *Turner* v. *Louisiana,* 379 U. S. 466 (1965).

In *Turner,* two deputy sheriffs who testified as to the circumstances of the defendant's confession served as jury bailiffs throughout the three-day trial. During this period the jury was sequestered and was in "close and continual association" with the deputies. *Id.,* at 468. "The deputies ate with them, conversed with them, and did errands for them." *Ibid.* Defendant's counsel repeatedly argued against this practice at trial, but the

trial judge refused to halt the deputy sheriffs' association with the jury. Under such circumstances, this Court found a denial of due process and reversed the convictions.

*Turner* did not, however, establish a rigid, *per se* rule automatically requiring the reversal of any conviction whenever a Government witness comes into contact with the jury. Indeed, certain chance contacts between witnesses and jury members—while passing in the hall or crowded together in an elevator—may be inevitable. Although such contacts may be undesirable, as Judge Learned Hand stated, "when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity." *United States* v. *Compagna,* 146 F. 2d 524, 528 (CA2 1944), cert. denied, 324 U. S. 867 (1945).

The Court in *Turner* recognized that there is a continuum of potential prejudice resulting from different types of contacts. It emphasized that the case before it dealt "not with a brief encounter, but with a continuous and intimate association throughout a three-day trial." 379 U. S., at 473. The Court granted relief only after analyzing the specific factors that might have resulted in prejudice to the defendant.

In the instant case it is undisputed that the sheriff never discussed the case with any member of the jury. As bailiff he escorted the jury to the jury room on several occasions. After the jury had found petitioner guilty and while it was considering the penalty, the sheriff responded to the jury's request for some soft drinks. This contact with the jury consisted solely of the sheriff walking into the room, placing the bottles on the table, and immediately leaving the room. There was no conversation beyond an exchange of formal pleasantries. Finally, and perhaps most significantly, the sheriff accompanied the jury to lunch.

As *Turner* noted, under certain circumstances a series of such informal contacts between witness and jury can be prejudicial. A jury member is more likely to question the credibility of an unknown Government witness than that of a person whom he has come to know and like after extended association. But in the present case the sheriff's contacts with the jury were far less prejudicial than in *Turner*. First, viewed quantitatively, the amount of contact involved here appears closer to a "brief encounter" than to the "continuous and intimate association" emphasized there, where the jury was sequestered with those witnesses for three days. Secondly, it is important to note that this is not a case where jurors became personally acquainted with the sheriff because of his role as bailiff. Indeed, prior to the trial which took place in Lamesa, Texas, a town of only about 13,000 people, the sheriff knew personally every single member of the jury. I find it impossible to conclude on this record that the sheriff's casual lunchtime conversation with people he already knew deprived petitioner of his constitutional rights.

By applying the *Turner* principle to the facts of this case, the Court converts *Turner*'s pragmatic approach into an almost insurmountable *per se* rule. Yet, this case decisively demonstrates the error of following such a quasi-legislative approach. After the decision in *Turner*, the Texas Legislature passed a statute forbidding a Government witness to serve as bailiff. Tex. Code Crim. Proc. Art. 36.24. This statute had prospective application only, and thus did not affect Gonzales' trial, which had taken place in 1961. In this manner the legislature was able to prevent a problem from arising in the future, without adopting a blunderbuss approach which would upset final convictions whose reliability and fairness could not reasonably be questioned. The legislators left to the courts the job of reviewing

past cases, using the more practical, flexible *Turner* approach.

Applying this case-by-case approach, it is hard to discern any unfairness in Gonzales' trial. Indeed, unlike *Turner*, Gonzales' counsel never raised any objection at trial to the sheriff's activities, although they were completely open and obvious. While this failure to object might not preclude petitioner's raising the issue now, it does seem to indicate a recognition at the time by all concerned that there was not in fact any dangerous objectionable impropriety taking place.

Today's ruling bids fair to swell the ever-mounting volume of constitutional litigation with which the courts of this country must deal. *Turner*'s reliance on *Irvin* v. *Dowd,* 366 U. S. 717 (1961), leaves open the inference that the gist of the claim of constitutional deprivation depends, not on the fact that the particular State's witness was a custodian of the jury, but on the fact that the State presumably failed to insulate the jury from all contact with the State's witnesses during the trial. Thus all of the unintended but virtually inevitable contacts between the State's witnesses, prosecuting attorneys, and the jurors during trial recesses could become potential constitutional infirmities in a conviction. Today's decision may well convert into Fifth or Fourteenth Amendment claims many matters that have in the past been dealt with quite satisfactorily by the trial judge determining on a motion for mistrial whether or not there was prejudice. Cases dealing with the issue in the past do not suggest that juror-witness contacts automatically raise issues of constitutional dimension. See, *e. g., Jordan* v. *United States,* 133 U. S. App. D. C. 102, 408 F. 2d 1305 (1969); *State* v. *Miles,* 364 S. W. 2d 532 (Mo. 1963). See generally Annot., 9 A. L. R. 3d 1275 (1966).

After revealing the activities of the deputy sheriffs in *Turner,* 379 U. S., at 473, the Court stated that "it

would be blinking reality" to ignore the inherent prejudice there. In my view, it is "blinking reality" to hold that petitioner here was denied a substantial constitutional right at the trial of his case. The Court having determined that this matter should be treated summarily and without argument, I would affirm.