## S92P1340. RADFORD v. THE STATE.
(426 SE2d 868)

CLARKE, Chief Justice.

Ronald Dexter Radford was convicted of murder, rape, kidnapping, aggravated sodomy and burglary. He was sentenced to death for the murder. See OCGA § 17-10-30. Because a state's witness acted as jury bailiff and associated with the jury for much of the trial, we reverse.[1]

---

[1] The crime was committed the early morning hours of July 29, 1989. Radford was indicted August 23, 1989 and the case was tried April 25 through May 5, 1990. A motion for new trial was filed and denied, after hearing, on June 30, 1992. The appeal was orally argued in this court on November 9, 1992.

1. Radford relies on *Turner v. Louisiana*, 379 U. S. 466 (85 SC 546, 13 LE2d 424) (1965). In *Turner*, two key prosecution witnesses, who were also deputy sheriffs, acted as jury bailiffs throughout a three-day trial. The Court explained that it would have "undermined the basic guarantees of trial by jury" for "two key prosecution witnesses" to have associated with the jury in any event, but their role as sheriff's deputies "made the association even more prejudicial." And this was true notwithstanding an assumption that the facts of the case were not discussed in the many conversations between the two witness-bailiffs and the jury.

However, as the Court explained in *Gonzales v. Beto*, 405 U. S. 1052, 1054 (92 SC 1053, 31 LE2d 787) (1971):

> *Turner* . . . did not set down a rigid, per se rule automatically requiring the reversal of any conviction whenever any government witness comes into any contact with the jury. [*Turner*] specifically indicated that association with the jury by a witness whose testimony was "confined to some uncontroverted or merely formal aspect of the case for the prosecution" would hardly present a constitutional problem. [Cit.] And it indicated that a mere "brief encounter," by chance, with the jury would not generally contravene due process principles. Ibid. . . . [C]ertain chance contacts between witnesses and jury members, while passing in the hall or crowded together in an elevator, are often inevitable.

The state argues that *Turner v. Louisiana*, supra, is distinguishable because Deputy Maxton was not a "key" witness and because his contact with the jury was minimal.

2. Deputy Maxton testified at trial that he was the first law officer to respond to the report of the crime. He talked to the six-year-old sister of the victim, who told him that a man had entered her trailer and accosted her sister. The girl told Maxton that when the man tried to "make her [sister] pregnant," she got scared and ran to the neighbor's house. She told Maxton that the man was tall, had dark hair and a mustache, and was wearing jeans, boots and a black Harley-Davidson teeshirt. She described the man's car as green with a white top.

Maxton testified that he observed pry marks around the front and the back door of the trailer. Inside, he saw signs of a struggle, including blood on the sofa, on the carpet and in the kitchen.

Later that day (Saturday), Maxton "staked out" the defendant's residence, on his "own volition." Maxton was alone. He saw Radford's green car with white top in the driveway with its hood and trunklid up. Radford was going from the front to the rear and back to the

front of the car, but Maxton could not tell "exactly . . . what he was doing."

At 6:00 p.m. Saturday, Maxton stopped Radford's car after noting that his rear bumper was missing and he had no tag. Maxton noted that Radford had covered his front seat with a blanket. Maxton talked to him briefly and then let him proceed.

3. There was evidence that Radford had lost the rear bumper to his car not far from where the victim's body was found. Another witness saw Radford cleaning his car Saturday afternoon. Radford told the witness he had removed the seat covers because they were old. He burned them and replaced them with an old bedspread. Some time after Maxton stopped him, Radford burned the whole car. Clothing matching the description furnished to Maxton by the victim's sister was found in Radford's residence.

4. Although Maxton's testimony was corroborated by, and to some extent cumulative of, other evidence in the case, we do not agree that he was a "minor" witness. In any event, his testimony clearly was not "confined to some uncontroverted or merely formal aspect of the case for the prosecution." *Turner v. Louisiana,* supra, 379 U. S. at 473.

That leaves only the question of whether his association with the jury can accurately be described as a "brief encounter." Ibid.

5. Maxton testified at the hearing on the motion for new trial that as soon as he was through testifying (the first day of trial), the sheriff told him to help guard the jury. In performing his duties, Maxton rode with the jury on the bus transporting them to and from their motel and to meals, dined with them, and stood guard on the motel balcony where jurors congregated each evening, using rocking chairs placed there for that purpose. Maxton testified that during the course of the trial he probably had contact with all of the jurors at one time or another. Although he did not discuss the case itself with jurors until after they had reached their verdict, he had numerous casual conversations with them during meals and at the motel where the jury stayed.

6. Maxton's testimony does not describe a "brief encounter." Instead, he plainly had "substantial and continuing contact with and authority over" the jurors during much of the trial. *Gonzales v. Beto,* supra, 405 U. S. at 1053.

> Our adversary system of criminal justice demands that the respective roles of prosecution and defense and the neutral role of the court be kept separate and distinct in a criminal trial. When a key witness against a defendant doubles as the officer of the court specifically charged with the care and protection of the jurors, associating with them on both a per-

sonal and an official basis while simultaneously testifying for the prosecution, the adversary system of justice is perverted. Id. at 1055-1056.

7. Radford makes other complaints about the sequestration and supervision of the jury.[2] However, we need not address them here. The foregoing divisions of this opinion establish the necessity for a retrial. The remaining enumerations of error are moot.

8. Since the evidence meets the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), both as to the conviction and as to the sentence, the case may be retried.[3]

*Judgment reversed. Benham, Fletcher, Sears-Collins, Hunstein, JJ., and Judge Brooks E. Blitch III concur; Hunt, P. J., concurs in the judgment only.*

DECIDED MARCH 15, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993.

*Neil A. Smith,* for appellant.

*Michael H. Crawford, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, C. A. Benjamin Woolf, Assistant Attorney General,* for appellee.

---

[2] Radford contends that other bailiffs socialized improperly with the jury, in violation of OCGA § 15-12-40. In addition, he contends the district attorney, the prosecuting law enforcement officer and the trial judge socialized with each other at the motel in view of the jury. Radford notes that while both the judge and the district attorney stayed at the same motel as the jury, defense counsel were housed in a motel several blocks away.

[3] Concerning the jury's "kidnapping" finding at the sentencing phase of the trial, see *Crawford v. State*, 254 Ga. 435 (5) (330 SE2d 567) (1985); *Crawford v. State*, 256 Ga. 57 (344 SE2d 215) (1986).