**Dennis Owen REED, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–97–00316–CR.

Court of Appeals of Texas,
San Antonio.

June 24, 1998.

Roger Bridgwater, Law Offices of Roger Bridgwater, P.C., Houston, for appellant.

Ronald L. Sutton, Dist. Atty., Donnie J. Coleman, Asst. Dist. Atty., Junction, for appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

Dennis Owen Reed appeals his conviction for two counts of indecency with a child. Reed raises three issues on appeal: (1) he contends that he is entitled to a new trial because a State's witness acted as part-time bailiff during the trial; (2) he contends that the trial court erred in designating the outcry witness; and (3) he contends that the prosecutor engaged in improper jury argument. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

In June, 1996, cousins, Jennifer, Jimmy, Dustin, Eric, and Kayla Schoppe, went with their grandmother, Sharon Tomlinson, to Dennis Reed's house. Tomlinson was Reed's housekeeper. As Tomlinson worked in Reed's house, the children played outside. Reed gave the children rides on his riding lawn mower throughout the afternoon.

That evening, Jennifer approached her father, Wayne Schoppe, and told him that Reed had told Kayla that it was okay to touch her between her legs. Schoppe called Kayla into the room and questioned both of the girls. He discovered that, while giving the girls rides on the lawn mower, Reed had put his hand inside their bathing suits and touched their "private parts." The girls also reported an incident in a bathroom where Reed watched them changing clothes.

The following morning, Schoppe contacted Deputy Steve Brown who came to Schoppe's residence and discussed the incident with Schoppe and Tomlinson. The next day, Judy Brown with Child Protective Services conducted a video taped interview of the girls. An investigation ensued, and Reed was eventually indicted on two counts of indecency with a child by contact.

Reed pled not guilty, and proceeded to trial before a jury. The jury returned a verdict of guilty, and assessed punishment at twenty years confinement on each count.

### ARGUMENT AND AUTHORITY

#### A. Disqualification of a Prosecution Witness

In his first issue on appeal, Reed contends that he is entitled to a new trial because a State's witness acted as "part-time bailiff" during trial. Reed preserved this argument in a motion for new trial. At the hearing on Reed's motion, Deputy Steve Brown, a State's witness during the guilt/innocence phase of Reed's trial, acknowledged that,

during the punishment phase, he adjusted the microphone for at least two witnesses, he stepped into the jury box to adjust curtains and windows, and he sat in a chair next to the jury box for a short time. There was also testimony that Brown helped at least two witnesses to the witness stand, but Brown denied doing so. Brown testified that he was at no time functioning as a bailiff during this trial and that he did not have any direct contact with either witnesses or jurors when he adjusted the microphone or the curtains. Following argument by counsel, the trial court denied Reed's motion for new trial.

The Texas Code of Criminal Procedure clearly provides that "if a person is to be called as a witness in [a] case, he may not serve as bailiff." TEX.CODE CRIM. P. art. 36.24 (Vernon 1981); see Ex parte Halford, 536 S.W.2d 230, 233 (Tex.Crim.App.1976) (reversing a conviction because the bailiff testified against the defendant and also had close contact with the jury for five days as their bailiff).

In Turner v. Louisiana, the United Sates Supreme Court held that a conviction could not stand where two crucial witnesses acted as bailiff during the course of a three day trial. Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). The jury was sequestered and the witness/bailiffs were in "close and continual association with the jurors." Id. Similarly, in Gonzales v. Beto, the sheriff performed the dual role of key witness for the prosecution and bailiff for the jury. Gonzales v. Beto, 405 U.S. 1052, 92 S.Ct. 1503, 31 L.Ed.2d 787 (1972). The court held that the conviction could not stand where the sheriff had escorted the jurors into and out of the courtroom, ate with the jurors, and brought the jurors refreshments while they deliberated. Id.

■ However, the Gonzales court noted that its decision in Turner did not establish a rigid per se rule requiring the automatic reversal of any case in which a State's witness comes in contact with the jury. Id. at 1054, 92 S.Ct. 1503. Instead, to determine whether a defendant's due process rights were violated, we must assess both the extent of the bailiff's association with the jury

and the importance of his testimony. Onofre v. State, 836 S.W.2d 807, 811 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); Long v. State, 820 S.W.2d 888, 891 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) (citing Gonzales, 405 U.S. at 1054, 92 S.Ct. 1503). In doing so, the facts of each case must be examined to determine what, if any, impact the bailiff's testimony had on the jury. Criado v. State, 438 S.W.2d 557, 559 (Tex.Crim.App.1968). Under this analysis, the fact that a bailiff testifies as a witness is not ordinarily grounds for reversal unless harm or prejudice is shown. Id. at 560; Strickland v. State, 784 S.W.2d 549, 554 (Tex.App.—Texarkana 1990, pet. ref'd).

■ In the present case, Deputy Brown was a key State's witness, and he did act, in a limited capacity, as bailiff. However, in performing these "bailiff-like" duties, his contact with the jury was minimal. At most, the jury saw Deputy Brown escort witnesses to the stand, adjust the microphone, adjust the curtains, adjust the windows, and sit in a chair next to the jury box for between five and twenty minutes. There is no evidence that he had any personal contact with any juror or that he ever exerted control over the jury. The type of juror contact in this case is analogous to that in Silva v. State, 499 S.W.2d 147 (Tex.Crim.App.1973), where a sheriff, who was a key State's witness, brought the jurors coffee while they deliberated. In Silva, the court found that such insignificant contact did not demonstrate harm. Id. at 151.

More importantly, by the time Brown performed the actions at issue, the jury was not in a position of ascribing extra credibility to his testimony because of his assistance to them. See Onofre, 836 S.W.2d at 811. Brown's testified only during the guilt/innocence phase of trial, and the actions at issue occurred during the punishment phase of trial. At the punishment phase, Brown's testimony regarding guilt/innocence had already been considered by the jury. Therefore, during the time Brown made adjustments in the courtroom, his testimony was no longer crucial to the issues before the jury. Accordingly, Reed has failed to show he was

harmed by Brown's dual role.[1] Reed's first issue on appeal is overruled.[2]

## B. Outcry Witness Testimony

In his second issue on appeal, Reed contends that the trial court erred in allowing Wayne Schoppe to testify as the State's outcry witness. According to Reed, Judy Brown, the CPS worker who interviewed the children, was the proper outcry witness. Reed argues that the girls' statements to Schoppe regarding the incident in question were not detailed enough to qualify him as an outcry witness.

■ Article 38.072 of the Texas Code of Criminal Procedure allows the admission of certain hearsay testimony in the prosecution of offenses committed against children twelve years old and younger. TEX.CODE CRIM. P. art. 38.072 § 1 (Vernon Pamph.1998). However, article 38.072 applies only to statements made (1) by the child against whom the offense was committed, and (2) to the first person, eighteen years of age or older, to whom the child made a statement about the offense. *Id.* at § 2(a). According to the court of criminal appeals, the outcry witness under this statute is the first adult to whom the child makes a statement that "in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App.1990). The statement must be more than a general allegation of sexual abuse. *Id.; Schuster v. State*, 852 S.W.2d 766, 767 (Tex.App.—Fort Worth 1993, pet. ref'd).

■ Pursuant to article 38.072, the trial court must hold an *in camera* hearing in order to determine whether a witness qualifies as an outcry witness. TEX.CODE CRIM. P. art. 38.072 § 2(b)(2) (Vernon Pamph.1998); *Dorado v. State*, 824 S.W.2d 794, 795 (Tex. App.—El Paso 1992), *vacated on other grounds*, 843 S.W.2d 37 (Tex.Crim.App.1992). The trial court has broad discretion in this regard, and the trial court's exercise of dis-

cretion will not be disturbed on appeal unless a clear abuse of that discretion is established by the record. *Garcia*, 792 S.W.2d at 92; *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

In the present case, the record reflects that the trial court conducted the appropriate *in camera* hearing in order to determine the admissibility of Wayne Schoppe's outcry testimony. Schoppe testified that Jennifer came into his room the evening after she had been at Reed's house. Jennifer told him that Reed had told Kayla it was okay for him to touch Kayla between the legs. Schoppe asked Jennifer if Reed had touched her between the legs, as well. Jennifer said that he had. Schoppe then called Kayla into the room, and Kayla confirmed what Jennifer had said. The girls told Schoppe that the touching had occurred while Reed was giving them rides on his lawnmower. Schoppe asked them if Reed was not just trying to keep them from falling off of the lawnmower. The girls said that he was not because he was touching them underneath their bathing suits. Jennifer told her father that it felt like Reed was pinching her. Jennifer also testified at the hearing, and said that her father was the first person she told about the incident.

■ Reed argues that, even though the girls told Schoppe about the incident first, Judy Brown should have been the designated outcry witness because the girls' statements to her were more detailed. We disagree. The cases in which the first person told about an incident of abuse was not designated as the outcry witness involve situations in which the first statement was nothing more than a general allusion to abuse. *See Garcia*, 792 S.W.2d at 91; *Hayden*, 928 S.W.2d at 231; *Schuster*, 852 S.W.2d at 768; *Villalon v. State*, 805 S.W.2d 588, 592–93 (Tex.App.—Corpus Christi 1991, no pet.); *Garibay v. State*, 787 S.W.2d 128, 130 (Tex.App.—Corpus Christi 1990, pet. ref'd). In this case,

---

1. The State notes that the sentence assessed by the jury was probably in response to Reed's daughter's testimony during the punishment phase. Reed's daughter testified that Reed had sexually molested her from the time she was three until she was six years old.

2. Althought there was no harm in this case, there is certainly a risk of harm in cases where law enforcement witnesses perform "bailiff-like" duties during trials in which they have also testified. Trial judges should take care to ensure that witnesses do not perform such duties.

Jennifer and Kayla made more than general allegations of abuse to Schoppe. They told Schoppe how, when, and where Reed had touched them. Accordingly, the trial court did not abuse its discretion in allowing Schoppe to testify as the outcry witness pursuant to article 38.072. Reed's second issue on appeal is overruled.

## C. Jury Argument

In his third issue on appeal, Reed contends that the prosecutor engaged in improper jury argument when she told the jury they would be calling Jennifer and Kayla liars if they returned a verdict of not guilty. The State argues that the prosecutor's comment was merely a response to Reed's jury argument in which he asked the jury to consider the effects of a guilty verdict on Reed. The following statement is at issue:

> [PROSECUTOR]: Reasonable doubt, because this is going to effect [sic] Mr. Reed the rest of his life. Well, I hope it effects [sic] Mr. Reed the rest of his life because it's going to effect [sic] these little girls the rest of their lives. And what effect is the verdict going to have on these little girls that says hey you're lying?

Reed properly preserved his complaint by objecting to the statement and requesting a mistrial. *See Valencia v. State*, 946 S.W.2d 81, 82 (Tex.Crim.App.1997). The trial court overruled the objection and the motion for mistrial, but instructed the jury to disregard the statement.

■ Permissible jury argument may consist of any or all of the following: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to the argument of opposing counsel; and (4) pleas for law enforcement. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex.Crim.App. 1996); *Sterling v. State*, 830 S.W.2d 114, 120 (Tex.Crim.App.), *cert. denied*, 506 U.S. 1035, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992). In determining whether a jury argument is improper, we consider the entire jury argument and all the evidence adduced at trial, not merely isolated portions. *Drew v. State*, 743 S.W.2d 207, 221–22 (Tex.Crim.App.1987), *cert. denied*, 512 U.S. 1266, 115 S.Ct. 5, 129 L.Ed.2d 906 (1994). In cases where a jury

argument is found to be erroneous, the error is generally cured by an instruction to disregard unless, in light of the record as a whole, it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused. *See Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Andujo v. State*, 755 S.W.2d 138, 144 (Tex.Crim.App. 1988).

■ Any error in the prosecutor's statement in this case was cured on two fronts. First, the State corrected its own error when, after Reed's objections, the prosecutor stated:

> I don't mean to leave that impression with you that I want you to say if I don't think there's any evidence here, well, I'm going to do it anyway. That's not the impression I'm trying to leave with you. But, by the same token, I don't want you to say, well, gosh, because it's going to have a bad effect on the defendant, I'm going to think about him and disregard the evidence, okay. What the court tells you is you have got to go by the evidence you have heard in this case, and you have got the evidence from the children.

In light of the totality of the State's jury argument, the jury was aware that it was to base its decision on the evidence and not on the verdict's effect on either the complainants or the defendant. Furthermore, any error was cured by the trial court's instruction to disregard. *See Shannon*, 942 S.W.2d at 597.

Reed contends that because the trial court requested the jury to disregard the prosecutor's statement instead of ordering them to do so, the instruction was not a legitimate attempt to cure the prosecutor's error. The trial court instructed the jury as follows: "Ladies and gentlemen, you've been given the charge, and you know what the burden is, and I'll ask you to disregard that last statement." We have held that an instruction "asking" the jury to disregard statements made during jury argument was sufficient to cure error. *See Elizondo v. State*, 665 S.W.2d 205, 208 (Tex.App.—San Antonio

 

1984, no pet.). Likewise, The court's instruction in this case was sufficient to cure any error created by the prosecutor's argument. Reed's third issue on appeal is overruled.

The judgment of the trial court is affirmed.