S08G0592. BASS v. THE STATE.
(674 SE2d 255)

HUNSTEIN, Presiding Justice.

We granted a writ of certiorari to address whether the Court of Appeals correctly analyzed the ineffective assistance of counsel claim made by appellant Ronald Bass based on defense counsel's failure to object when the trial court allowed the county sheriff, who was the lead investigative officer and witness for the State, to serve as bailiff during Bass's trial. *Bass v. State*, 288 Ga. App. 690 (2) (a) (655 SE2d 303) (2007). We conclude that defense counsel performed deficiently

---

by failing to object and that Bass's right to a fair trial was prejudiced when the sheriff, after providing key testimony on behalf of the State, assumed the duties of bailiff. We accordingly reverse.

A review of the record establishes that appellant was charged in a 24-count indictment with arson, robbery, simple battery, criminal damage to property and criminal trespass committed against persons who had participated in a nuisance lawsuit regarding appellant's dogs. Gary Wilson, who had been the elected sheriff of Randolph County since 1985, was one of many witnesses called by the State in appellant's first trial. Wilson testified, inter alia, about how he investigated the damage to one victim's truck; uncovered on his own the damage to another victim's car; summoned the GBI and a tracking dog; followed the dog as she tracked a scent to appellant's house; and repeated to the jury how a witness he questioned had declined to implicate appellant out of fear that appellant would burn down the witness's house. Although the jury convicted appellant of simple battery, the jury hung on the remaining 23 charges. One year later, a second trial was convened. Wilson was again included on the witness list. Nevertheless, he was administered the bailiff oath at the start of the proceedings, along with a deputy sheriff who initially assumed the active duties of bailiff. See OCGA § 15-12-140.[1] While sworn in as a bailiff, Wilson took the oath as a witness, joined the other witnesses in sequestration, was called to the stand as a prosecution witness on two different occasions and gave essentially the same testimony as at the first trial. The record then reveals that, at some point in the proceedings, Wilson advised the trial court that the acting bailiff was "going to be running out of hours" and would be "running to comp time" if kept on as bailiff. At the close of the State's evidence, the trial judge, with defense counsel's express agreement, authorized Wilson to assume the active duties of bailiff.[2] Wilson so acted for the final two days of the four-day trial, from the beginning of appellant's presentation of evidence until the jury finished deliberating and rendered a verdict, in which it convicted appellant of the remaining 23 counts.

Bass's trial counsel died before the hearing on his motion for new trial, in which conflict-free counsel asserted a claim of ineffective assistance of counsel based on Wilson's service as bailiff. The

---

[1] Wilson testified at the hearing on the motion for new trial that he was sworn in as bailiff according to the "normal procedure" in that court.

[2] The trial transcript reveals that the trial court stated, "I think I had spoke to the sheriff and he had spoken with [the assistant district attorney] and [defense counsel], but the other bailiff has run out of hours and the sheriff will act as bailiff. And there is no objection to that?" Defense counsel replied, "No objection to that. We trust him not to hurt anybody." At the motion for new trial, Wilson acknowledged that he assumed the position as bailiff in order to "save the county some money."

trial court denied appellant's motion without explanation and, on appeal, after assessing the claim under the two-prong test in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) (defendant must show both that counsel performed deficiently and that counsel's deficient performance prejudiced the defense in order to prove ineffective assistance), a majority of the Court of Appeals affirmed. *Bass v. State*, supra, 288 Ga. App. at 697 (2) (a). As to the deficient performance prong based on trial counsel's failure to object, the court held that "[t]he circumstances are always local, and such matters are usually best left to the experienced trial judge presiding and to the judgment and instincts of the adversarial trial counsel." (Footnote omitted.) Id. at 696 (2) (a). As to the prejudice prong of the *Strickland* test, the Court of Appeals, citing the "cold record and distance from the scene," stated it was unable to "discern whether [Bass] in fact was prejudiced or not by the allowing of the elected sheriff to serve as bailiff." (Footnote omitted). Id. After finding significant differences between Wilson's contact with the jury and those contacts in issue in two United States Supreme Court cases,[3] and acknowledging that Wilson's contacts with the jury "could have rendered his service as bailiff improper if objection had been made," id. at 697 (2) (a), the Court of Appeals concluded that, because trial counsel expressly agreed with the appointment of Wilson as bailiff, it could not "say that, as a matter of law, such consent automatically equals to ineffective assistance of counsel." Id. The Court of Appeals erred by so holding.

> Our adversary system of criminal justice demands that the respective roles of prosecution and defense and the neutral role of the court be kept separate and distinct in a criminal trial. When a key witness against a defendant doubles as the officer of the court specifically charged with the care and protection of the jurors, associating with them on both a personal and an official basis while simultaneously testifying for the prosecution, the adversary system of justice is perverted. [Cit.]

*Radford v. State*, 263 Ga. 47, 49-50 (6) (426 SE2d 868) (1993). Thus, in *Radford*, consistent with *Turner v. Louisiana*, 379 U. S. 466 (85 SC 546, 13 LE2d 424) (1965), we recognized that a criminal defendant's right to an impartial jury cannot be reconciled with a practice in which the trial court permits a substantial witness for the State to

---

[3] Those cases were *Gonzales v. Beto*, 405 U. S. 1052 (92 SC 1503, 31 LE2d 787) (1972) (Stewart, J., concurring) and *Turner v. Louisiana*, 379 U. S. 466 (85 SC 546, 13 LE2d 424) (1965).

have a custodial relationship with the members of the jury during trial.

In regard to the deficient performance prong of appellant's ineffectiveness claim, the record reflects that defense counsel personally heard the critical testimony Wilson provided at trial to establish appellant's guilt. Based on this testimony, defense counsel could not reasonably have thought Wilson's testimony was "'"'confined to some uncontroverted or merely formal aspect of the case for the prosecution."'"'" *Radford v. State*, supra, 263 Ga. at 48 (1). Nevertheless, in flagrant violation of appellant's fundamental right to a fair trial, see *Turner v. Louisiana*, supra, 379 U. S. at 472-473, Wilson was sworn in as a bailiff at the very start of the proceedings, and, after giving key testimony on behalf of the State, was then allowed to have active custodial contact with the jury with defense counsel's express agreement. Under the circumstances in this case, no competent attorney could reasonably have believed that Wilson's service as bailiff would not compromise appellant's constitutional right to a fair jury. Regardless of the speculative "local" circumstances on which the Court of Appeals relied, defense counsel's decision not to object to Wilson serving as bailiff was an unreasonable one no competent attorney would have made in the same situation. The trial court clearly erred by failing to find that defense counsel's performance was deficient in this regard.

In assessing the prejudice prong of appellant's ineffective claim, the Court of Appeals focused on the type and duration of the contact Wilson had with the jurors. See *Bishop v. State*, 268 Ga. 286, 293 (10) (486 SE2d 887) (1997). Although, as the Court of Appeals correctly noted, Wilson's contact with the jury did not involve eating with them or conversing with them in private, neither did his association with the jury consist of a "mere 'brief encounter'" or "chance contacts . . . while passing in the hall or crowded together in an elevator." *Gonzales v. Beto*, 405 U. S. 1052, 1054, 1055 (92 SC 1503, 31 LE2d 787) (1972) (Stewart, J., concurring). Wilson served as bailiff continuously for half of the four-day trial, from the start of the presentation of evidence by the defense until the verdict was rendered, during which the record indicates that he would have overseen the jurors when they took breaks for snacks and restroom visits, handled a note sent to the court by the deliberating jury and possibly also provided the jurors with food.

> [E]ven if it could be assumed that [Wilson] never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout [half of]

the trial between the jurors and th[is] key witness[ ] for the prosecution.

*Turner v. Louisiana*, supra, 379 U. S. at 473.

Moreover, the Court of Appeals failed to give due weight to the nature and significance of Wilson's testimony. *Bishop v. State*, supra, 268 Ga. at 293 (10) (in determining whether reversible error occurred when prosecution witness served as bailiff, appellate courts must look to "the type and duration of the contact and the significance of the testimony"). The details of Wilson's testimony, discussed above, are more fully set forth in the dissent in *Bass v. State*, supra, 288 Ga. App. at 704-705. We need only state, as in *Radford*, supra, 263 Ga. at 49 (4), that "we do not agree that [Wilson] was a 'minor' witness. In any event, his testimony clearly was not 'confined to some uncontroverted or merely formal aspect of the case for the prosecution.' [Cit.]"

To show that defense counsel's deficient performance so prejudiced him that the outcome of the trial would have been different but for counsel's error, appellant's burden is to show only a reasonable probability of a different outcome, not that a different outcome would have been certain or even "more likely than not." See *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008). Based upon our review of the trial transcript, we agree with the dissent in *Bass v. State*, supra, 288 Ga. App. at 704, that "[w]hile the evidence in this case was sufficient to support Bass's convictions, it was not overwhelming. The case was largely circumstantial and hinged on the credibility of the prosecution witnesses, one of whom was Wilson." (Footnote omitted.) The first jury that heard the evidence against appellant was unable to render a verdict on 23 of the 24 counts against him. A prior hung jury is a factor this Court has recognized in addressing the prejudice prong of an ineffectiveness claim. *Cobb v. State*, supra at 392 (2). Our review of the complete record of appellant's first trial does not reflect that the prosecution's evidence was significantly stronger in appellant's second trial so as to eliminate any possibility that, without Wilson's improper service as bailiff, the jury would have convicted Bass. Under the circumstances in this case, we conclude there is a reasonable probability that the outcome of the trial would have been different if defense counsel had objected to the trial court's decision to allow Wilson, a key prosecution witness, to serve as bailiff. It follows that the Court of Appeals erred by affirming the trial court's denial of appellant's motion for new trial on the basis of ineffective assistance of counsel.

We reiterate that the right of trial by jury means the right of trial by a fair and impartial jury. See *Turner v. Louisiana*, supra, 379 U. S. at 471; see also *Brooks v. State*, 244 Ga. 574 (II) (1) (261 SE2d 379)

(1979), vacated and remanded on other grounds, 446 U. S. 961 (100 SC 2937, 64 LE2d 821) (1980). To preserve that right, we have repeatedly disapproved the practice of allowing an officer who is a key prosecution witness in a criminal case to serve as bailiff in charge of the jury. The right to an impartial jury cannot be reconciled with a practice that, by permitting such witnesses to maintain during trial a custodial relationship with the jury, lends itself to the presence of influences extraneous to a proper determination of guilt or innocence. See *Turner v. Louisiana*, supra, 379 U. S. at 474 (custodial relationship "could not but foster the jurors' confidence in those who were their official guardians"). While we acknowledge our precedents in which we have declined, absent objection, to presume prejudice in such cases, see, e.g., *Hudson v. State*, 250 Ga. 479 (5) (299 SE2d 531) (1983); *Bishop v. State*, supra, 268 Ga. at 293 (10), continuation of this practice of allowing key prosecution witnesses to serve as bailiffs in violation of the well-established precedents in the United States Supreme Court and this Court may well force us to reconsider the efficacy of those decisions.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

The majority departs from settled federal and state law by utilizing a presumption of prejudice which is wholly inapplicable for two separate and compelling reasons. The majority also errs to the extent that it relies upon actual prejudice in concluding that the failure to object to Gary Wilson's service as a bailiff constituted ineffective assistance of counsel.

1. "[C]ontact between the jury and a witness for the State who is also an officer of the court is not grounds for an automatic reversal. [Cit.]" *Bishop v. State*, 268 Ga. 286, 293 (10) (486 SE2d 887) (1997). See also *Gonzales v. Beto*, 405 U. S. 1052, 1054 (92 SC 1503, 31 LE2d 787) (1972) (Stewart, J., concurring); *Radford v. State*, 263 Ga. 47, 48 (1) (426 SE2d 868) (1993). The factors to be considered are both the importance of the bailiff's testimony and the type and duration of his association with the jury. *Bishop v. State*, supra; *Walker v. State*, 2 SW3d 655, 658 (Tex. App. 1999). Under *Turner v. Louisiana*, 379 U. S. 466 (85 SC 546, 13 LE2d 424) (1965), "[w]hen the bailiff's contact is extensive and the testimony addresses substantive issues of the defendant's guilt, prejudice is presumed." *Agnew v. Leibach*, 250 F3d 1123, 1135 (II) (C) (7th Cir. 2001). On the other hand, even where the bailiff was a key witness for the prosecution, "if the jury contact is minimal and the jury was not in a position of ascribing extra credibility to the testifying bailiff because of his assistance to them, there is no ground[ ] for reversal. [Cits.]" *Walker v. State*, supra. In

evaluating the contact with the jury, courts " 'look to factual indicia of custody and control and not solely to the lawful authority to exercise such custody or control.' [Cit.]" *State v. Nicholson*, 558 SE2d 109, 129 (N.C. 2002).

In this case, Wilson was sequestered with the other witnesses and, except for the duration of his testimony, did not appear in the courtroom during presentation of the State's evidence. On the third day of trial, Wilson began acting as bailiff. On the morning of the fourth day, the jury began deliberations at 9:00 a.m., sent a note to the trial court at 9:35 a.m., reached a verdict at 10:22 a.m., and was excused shortly thereafter. It is undisputed that Wilson did not converse with any juror, nor did he have any contact or communication with the jury other than that which the trial court specifically directed. It is further undisputed that Wilson never entered the jury room and that, while the jury was out, he remained in a chair in the courtroom outside the door of the jury room. When there was a knock on the door, Wilson would inform the trial court and, pursuant to its direction, open the door in the presence of the defendant and the judge, see what the jury wanted, and report to the judge. The jurors were not sequestered overnight. During recesses, they were permitted to go downstairs by themselves for the restroom or for refreshments and were either instructed to return within a certain time or told that the judge would send the bailiff down to tell them when to return. Therefore, contrary to the majority opinion, there is not any indication that the jurors were "overseen" by Wilson during breaks. Furthermore, if Wilson handled the jury's note during deliberations, he did so in the presence of the judge and the defendant. The majority also states that Wilson "possibly" provided the jurors with food. At most, that occurred only once and strictly under the direction of the trial court. The jury was effectively informed that the provision of food would require a decision by the trial court, and would not result from unilateral action by Wilson.

Thus, "the record does not conclusively support [the majority's] interpretation of what transpired . . . ." *Hudson v. State*, 250 Ga. 479, 484 (5) (299 SE2d 531) (1983). To the contrary, the record shows that Wilson's contact with the jury is readily distinguishable from *Turner*, *Gonzales*, and *Radford*, which are the primary cases upon which the majority relies. In *Turner v. Louisiana*, supra at 473, the bailiffs ate and conversed with the sequestered jurors, drove them to their lodgings, did errands for them and, therefore, had a "continuous and intimate association throughout a three-day trial — an association which gave these witnesses an opportunity, as [one bailiff] put it, to renew old friendships and make new acquaintances among the members of the jury." In *Gonzales v. Beto*, supra, the plurality of three Justices noted that the sheriff-witness "associ-

at[ed] extensively with the jurors during the trial" by, among other things, conducting them in and out of the courtroom, and eating and conversing with them in a private room at a restaurant. In *Radford v. State*, supra at 49 (5), the bailiff rode with the sequestered jurors on the bus, dined with them, stood guard where they congregated at their motel, and had numerous casual conversations with them. In each of those cases, the jurors were in the bailiffs' " 'custody and under their charge out of the presence of the court for protracted periods of time with no one else present.' [Cit.]" *State v. Flowers*, 489 SE2d 391, 402 (N.C. 1997). Those circumstances are what caused the Supreme Court of the United States in *Turner v. Louisiana*, supra, to recognize the "extreme prejudice inherent" in a close and continual association between the jurors and bailiffs who are also key witnesses.

Because such circumstances are not present here, the majority erroneously applies *Turner*'s presumption of prejudice. Wilson did not " 'associat[e] with [the jurors] on both a personal and an official basis . . . .' [Cit.]" *Radford v. State*, supra at 49-50 (6). The nature of his association with the jury clearly was official only, and he "had no personal contact with the jurors." *Bishop v. State*, supra. There is not any evidence that Wilson "fraternized with the jurors here." *Mills v. Commonwealth*, 170 SW3d 310, 338 (IV) (A) (2) (d) (Ky. 2005). His jury contact was no more personal than the act of bringing coffee to jurors while they deliberated, which has been held to be an insignificant contact which did not demonstrate harm. *Reed v. State*, 974 SW2d 838, 840 (A) (Tex. App. 1998).

> In this case, the circumstances of [Wilson's] contact with the jury were considerably different from the contacts in *Turner*. First [there was not any evidence that he was ever] alone with the jury. . . . He was not singled out as "trustworthy" to enter the private realm of the jury room during deliberations. [Cit.] Both the judge and defense counsel were present to observe any inappropriate contacts between [Wilson] and the jurors. Second, the judge specifically instructed . . . the jurors not to discuss the case . . . . Third, the contact was not continuous throughout the trial, but was limited to [slightly more than] one day.

*Cooper v. Calderon*, 255 F3d 1104, 1113 (IV) (C) (9th Cir. 2001). With the apparent exception of occasional trips by Wilson from the courtroom to a public area of the courthouse to tell the jurors when the trial court was ready for them to return, his "contact with the jurors took place in the courtroom and occurred at various times over a period of less than a day and a half. [He] did not have specific

contact or communication with any individual juror." *State v. Flowers*, supra. Therefore, the jury's exposure to Wilson "was brief, incidental, [and] without legal significance. [Cits.]" *State v. Flowers*, supra.

Accordingly, "[a] presumption of prejudice does not arise from [Wilson's] limited exposure to the jury." *State v. Nicholson*, supra at 130. Although we do not approve of the performance of court-related functions by a witness for the State, "there was no extensive contact with the jurors and, under these circumstances, [there was] no reversible error." *Bishop v. State*, supra. Thus, even if defense counsel had objected to Wilson's service as a bailiff, reversal would not be appropriate.

2. However, assuming that a timely objection would have required reversal due to the presumption of prejudice in *Turner*, that presumption does not apply when a defendant is procedurally barred from raising an issue of improper jury contact. As the majority itself reluctantly acknowledges near the end of its opinion, we have declined to presume prejudice from service by a key prosecution witness as bailiff in the absence of any objection. (Maj. op. p. 94.) *Bishop v. State*, supra; *Hudson v. State*, supra. There is a sound rationale for this precedent and, specifically, for its application in the context of an ineffective assistance claim.

> In evaluating the prejudice component of a claim of ineffective assistance, we apply a presumption of prejudice only in extremely narrow circumstances which are not applicable here. [Cit.] "(E)ven if the law presumes prejudice for certain errors when they are timely raised," a convicted defendant who, like [Bass], is seeking to overcome a procedural bar, whether in conjunction with or separate from a claim of ineffective assistance of counsel, "does not have the benefit of that presumption of prejudice, and must instead meet the actual prejudice test. . . ." [Cits.]

*Greer v. Thompson*, 281 Ga. 419, 421-422 (637 SE2d 698) (2006).

3. Both *Turner v. Louisiana*, supra, and *Gonzales v. Beto*, supra, imply that actual prejudice would be shown by evidence that the witness-bailiff spoke to the jurors about the case itself outside the courtroom. See *Johnson v. Dugger*, 932 F2d 1360, 1366 (II) (C), fn. 40 (11th Cir. 1991).

> The central issue with respect to actual prejudice is whether the actions of the sheriff through his responsibilities as bailiff have undermined the impartiality of the jury. *Turner v. Louisiana*, [supra at 471-472]. Applying this standard,

[Bass] has failed to explain how the actions of the sheriff adversely and tangibly affected the reliability of the outcome of the [trial]. Thus, for example, there is no suggestion that Sheriff [Wilson] ever spoke to the jurors about [Bass'] case outside the courtroom. [Cit.]

*Johnson v. Dugger*, supra at 1366 (II) (C). Furthermore, there is not the slightest evidence that any juror actually ascribed "extra credibility" to Wilson because of his brief, incidental, and legally insignificant assistance to the jury. Bass "has made no showing of 'actual prejudice' sufficient to overcome the procedural bar. [Cit.]" *Johnson v. Dugger*, supra.

The majority relies on its determination that the evidence was not overwhelming, along with the fact that there was a hung jury in the first trial. These circumstances generally are relevant factors in considering an assertion that a certain instance of ineffective assistance was harmless in light of all the evidence. Standing alone, however, they obviously cannot establish that a particular deficient performance by defense counsel so prejudiced the defendant that, but for counsel's specific error, there was a reasonable probability that the outcome of the trial would have been different. In the absence of any showing whatsoever that Wilson's actions as bailiff "adversely and tangibly affected the reliability of the outcome," "the likelihood that the outcome of the trial would have been different had [Wilson] not served as bailiff is negligible." *State v. Nicholson*, supra. Therefore, I dissent to the reversal of the Court of Appeals' judgment.

DECIDED JANUARY 26, 2009 —
RECONSIDERATION DENIED MARCH 9, 2009.

*Brian Steel*, for appellant.
*Charles M. Ferguson, District Attorney*, for appellee.