James H. Randals, Texas Department of Corrections, Huntsville, Tex., for petitioner.

Jack Boone, Asst. Atty. Gen., Austin, Tex., for respondent.

### Charles Edward HAWKINS, Petitioner,

v.

### W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent.

### Civ. A. No. 73-H-542.

United States District Court,
S. D. Texas,
Houston Division.

Sept. 21, 1973.

## MEMORANDUM AND ORDER

SINGLETON, District Judge.

Petitioner was indicted in Harris County, Texas, upon a charge of robbery by assault. After a one-day trial, a jury found him guilty as charged. Upon a factual finding that the petitioner had before been convicted of a felony of like nature, his punishment was set pursuant to the Texas recidivist statute at life.[1] The conviction was affirmed by the Texas Court of Criminal Appeals. Hawkins v. State, 424 S.W.2d 907 (Tex.Cr.App., 1968). His state remedies exhausted, petitioner filed an application for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2241 et seq., alleging his confinement to be illegal in that he was denied a fair trial in the state court.

---

1. Article 62, Vernon's Ann.P.C. provides:
    "If it be shown on the trial of a felony less than capital that the defendant has been before convicted of the same offense, or one of the same nature, the ·punishment on such second or other subsequent conviction shall be the highest which is affixed to the commission of such offenses in ordinary cases."
It was alleged and proved that petitioner had before been convicted of burglary with intent to commit theft.

This court held an evidentiary hearing to determine whether the circumstances attending petitioner's trial were such as to deprive him of a right secured to him by the fourteenth amendment. The following constitutes this court's findings of fact and conclusions of law.

Petitioner was originally scheduled for trial on September 21, 1965. On that date, the trial court's bailiff, R. L. Holden, took petitioner from the jail to the court's holdover cell. While there, petitioner's attorney informed him that he could not find any of the witnesses that petitioner had asked be called to testify in his behalf. A few moments later petitioner was informed by the bailiff that he was wanted on the telephone and that the judge had instructed him to take the call in his chambers. It was petitioner's testimony at the evidentiary hearing that the phone call was from his mother-in-law who informed him that his attorney had told her and the other witnesses that his trial was to take place on September 22 instead of September 21. Petitioner related that after completing the phone call he confronted his attorney and after a short verbal altercation, attacked him. The bailiff along with another individual eventually restrained petitioner. During the encounter the bailiff was slightly injured and his clothing was torn. At a subsequent hearing [2] the court reset the trial to a later date and appointed other attorneys to represent the petitioner.

On November 8, 1965, petitioner's case was again called for trial. The same R. L. Holden acted as bailiff. In that role, Holden showed the prospective jurors to their places and after the jury was selected, seated them in the jury box. He remained in the courtroom during the trial escorting witnesses to and from the witness stand. After the prosecution presented part of its case, the court recessed for lunch. As bailiff, Holden accompanied the jury to lunch. After the noon recess, the prosecution adduced testimony from three other witnesses and then called the bailiff, Mr. Holden, as a witness. As the bailiff took the witness stand, petitioner objected and asked that arguments on his objection be heard out of the jury's presence. The judge ordered the bailiff to step down from the witness stand and to retire the jury so the matter could be discussed. On voir dire, the prosecutor testified that he had not had an opportunity to discuss with Holden his testimony until after the trial had commenced, but admitted that he had learned of the escape attempt the morning of the trial in a one-minute conversation with Holden and further testified that it was his intention at the outset of the case to offer the bailiff's testimony. Even though the prosecutor knew of the testimony the morning of the trial and even though he interviewed Holden sometime around noon, the prosecutor apparently did not inform the judge of the fact that Holden would be called as a witness and therefore Holden went about his duties as custodian of the jury, including accompanying them to lunch.

Petitioner's objection was overruled (the judge designated another person to replace Holden as bailiff for the remainder of the trial) and the bailiff was allowed to testify for the prosecution relating to the jury the incident that occurred on the 21st of September. His version was that the petitioner attacked him and injured him but that the attempted escape had been foiled when another prisoner came to the 60-year-old bailiff's rescue and helped place the petitioner back in the holdover cell.

It is this dual role of court officer and witness for the prosecution that petitioner claims robbed him of a fair trial. Petitioner's contention involves a seldom articulated principle which is basic to our adversary system of criminal justice, that is, "that the respective roles of prosecution and defense and the neutral role of the court be kept separate and distinct." [3] Our rules of evidence, our

2. The court reporter's notes of this hearing are no longer available.

3. Gonzales v. Beto, 405 U.S. 1052, 1055, 92 S.Ct. 1503, 1505, 31 L.Ed.2d 787, 789.

rules of procedure, and the entire gambit of the criminal process presupposes this principle. The Supreme Court was mindful that this principle goes to the very integrity of the fact finding process when it handed down its decisions in Turner v. Louisiana (1965) 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, and Gonzales v. Beto, 405 U.S. 1052, 92 S.Ct. 1503, 31 L.Ed.2d 787.

In *Turner* two deputy sheriffs served dual roles as prosecution witnesses and custodians of the jury. During the three-day trial the jury was sequestered and was in "close and continual association" with the deputies. The Court held that the prejudice inherent in that situation violated Turner's due process right to a fair trial before an impartial jury.

In *Gonzales,* a county sheriff played a dual role at the trial. He was both a key prosecution witness and the bailiff of the jury. The State's evidence consisted primarily of petitioner's signed and witnessed confession. The jury was not sequestered during the one-day trial and returned a guilty verdict after a 10-minute deliberation. Although the sheriff accompanied the jury to lunch and had other contacts with them incidental to his duties as bailiff, it was undisputed that he never discussed the case with any member of the jury. Nevertheless, the Court, concerned with the inherent prejudice involved with the mixing of the roles of a supposedly neutral court officer and witness for the prosecution, held the procedure denied Gonzales a fair trial.

The State attempts to distinguish the *Turner-Gonzales* holdings from the case at bar on three grounds. First, it is argued that the witness-bailiff was not the bailiff during the entire trial. Once the bailiff was called as a witness, another person was designated by the trial judge to act as bailiff for the remainder of the trial. This distinction is without a material difference. Holden acted as bailiff and supposedly neutral officer of the court until the time that he testified. The relationship between the jury and the bailiff was established prior to his testimony and the act of removing him as bailiff just before his testimony did nothing to temper that relationship. In fact, the act of removal, occurring immediately prior to his testimony may well have bolstered the established relationship and placed even greater emphasis on his testimony.

Secondly, the State argues that since the witness-bailiff did not discuss the case with the jury during the time he was their custodian, no harm could have resulted from the association. This argument is best answered by the following quote from *Gonzales*:

"Naturally, the extent and intensity of a bailiff's association with a jury will vary from case to case. But, in the petitioner's case, I cannot say that it was by any means de minimis. Although the trial lasted only one day and the jury was not sequestered with the county sheriff, the association between the jurors and the witness-bailiff was an extended one, and the duality of the witness-bailiff's roles was inevitably driven home to the jury. And, although the witness-bailiff may not have spoken to the jurors about the case itself outside the courtroom, *Turner* makes clear that even if he 'never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this association throughout the trial between the jurors and [this] key witness for the prosecution.' 379 U.S., at 473 [85 S.Ct. at 550, 13 L.Ed.2d 429]. It is enough to bring the petitioner's case within the four corners of *Turner* that the key witness for the prosecution also served as the guardian of the jury, associating extensively with the jurors during the trial."

405 U.S. at 1056, 92 S.Ct. at 1505, 31 L. Ed.2d at 789.

Finally, the State's argument that the witness-bailiff was not a "key witness" for the prosecution and that his testimony was not "crucial" is rejected. The

Supreme Court did not attempt to draw definable lines on either side of what they considered to be a "key witness." [4]

> ". . . association with the jury by a witness whose testimony was 'confined to some uncontroverted or merely formal aspect of the case for the prosecution' would hardly present a constitutional problem. Id. [379 U.S.], at 473 [85 S.Ct. at 550, 13 L. Ed.2d 429]. And it indicated that a mere 'brief encounter,' by chance, with the jury would not generally contravene due process principles. Ibid. For, as pointed out in dissent today, certain chance contacts between witnesses and jury members, while passing in the hall or crowded together in an elevator, are often inevitable."

Gonzales v. Beto, 405 U.S. at 1054, 92 S.Ct at 1505, 31 L.Ed.2d at 789. It is clear that the testimony of Holden (witness-bailiff in our case) was not "confined to some uncontroverted or merely formal aspect of the case" [5] and that his association with the jury was not anywhere near a "brief encounter."

Whether the bailiff's testimony was "crucial" realistically can only be determined by polling the individual jurors, an exercise in futility at this late date. And, the answer is not readily found in the printed pages of the record. The petitioner testified at the habeas hearing that the entire atmosphere in the courtroom changed when the bailiff testified. It would take an acutely sagacious court reporter indeed to capture this sense impression and preserve it on paper. Nevertheless, borrowing the guidelines of the harmless error cases,[6]

this court can legitimately conclude that the testimony concerning the attempted escape, bolstered by the fact that it came from a supposedly neutral officer of the court, was prejudicial and not harmless beyond a reasonable doubt.

The State produced two witnesses who identified petitioner as the person they saw commit the robbery. However, both witnesses testified that the robber wore a duck-hunter's type cap that was pulled down over his ears to his eyebrows. Both identified a .25 caliber pistol that the police had taken from petitioner's car during a traffic arrest as looking like the one used by the robber. However, the petitioner's brother testified that the pistol was his and that he had not given it to petitioner until a date subsequent to the alleged robbery. Petitioner was arrested during his move to Florida to start a new job. At the time of the arrest, he had all of his belongings in his car. A search of the car produced the .25 caliber pistol, but a duck-hunter's cap was never found and petitioner's family testified that he never owned such a cap. Finally, to refute the eyewitness testimony, petitioner produced three alibi witnesses who testified they were with petitioner on the day of the alleged robbery. The bailiff's testimony concerning an attempted escape (recognized under Texas law as one of the strongest indicia of guilt) [7] was certainly damaging. And, given this posture of the trial, it is imperative to conclude that the jurors would have found the State's case less persuasive had the bailiff's testimony not been before them.

In all criminal prosecutions the accused enjoys the right to trial by an im-

---

4. Nor did the Texas Legislature attempt to define "key witness" when it enacted its statute to implement the *Turner-Gonzales* rule. Article 36.24, Vernon's Ann.C.C.P. prohibits the use of bailiff as a witness, and Judge Onion, presiding judge of the Texas Court of Criminal Appeals, in his special commentary on Article 36.24, points out that the proscription of the article "applies regardless of whether the witness is material or not." Special Commentary on Article 36.24, Vernon's Ann.C.C.P.

5. Compare Crawford v. Beto, 385 F.2d 156 (5th Cir., 1967).

6. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

7. See, e. g., Williams v. State, 489 S.W.2d 614 (Tex.Cr.App.1973) where the court quotes from the Old Testament the following: "The wicked flee when no man pursueth: but the righteous are bold as a lion." Proverbs 28:1.

partial jury. Our forefathers considered that right of such importance that it was guaranteed twice, first in article 3, section 2, clause 3, of the Constitution and then in the sixth amendment. To permit this kind of association between the jurors and this prosecution witness undermines that right in violation of the due process clause of the fourteenth amendment.

The petition for writ of habeas corpus is granted and petitioner is discharged from custody of the respondent without prejudice to the State to retry petitioner upon the indictment within ninety days from this date.