# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-1184

YUSEF LATEE WILLIAMS,

*Petitioner-Appellant,*

*v.*

MICHAEL THURMER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 233—**Aaron E. Goodstein**, *Magistrate Judge*.

ARGUED MARCH 3, 2009—DECIDED APRIL 6, 2009

Before BAUER, KANNE, and WOOD, *Circuit Judges*.

PER CURIAM. In March 1996 a Wisconsin jury found Yusef Williams guilty of first-degree murder, and the judge sentenced him to life imprisonment with the possibility of parole after 45 years. After exhausting his state remedies, Williams filed a pro se petition for a writ of habeas corpus, 28 U.S.C. § 2254, arguing, among other things, that his right to due process was violated when a bailiff testified during his trial. The district court denied

his petition, but we certified his due-process claim for appeal. We now affirm the judgment of the district court.

At Williams's trial the State presented two key witnesses. The first, Angelo Tate, testified that he and Williams lived in the same duplex, where Williams sold drugs from his basement apartment. On the evening of October 26, 1995, Tate saw Williams shoot one of his customers, Gary Cooper. Tate also testified that he saw Williams remove Cooper's body from the house. The next day, Williams told Tate that he killed Cooper because of a dispute over drugs.

Next, the State elicited testimony from Tate's friend, Lawanda Norris, who was visiting Tate the evening that Cooper was shot. Norris testified that she went to the basement—where Williams lived and sold drugs from—to use the bathroom and saw Williams and another man drag Cooper's body outside and put it into a garbage can.

The credibility of both witnesses was called into question during their testimony. Both admitted to using cocaine the evening that Cooper was shot. Tate testified that he had twice been convicted of a crime, and Norris admitted that she had six convictions. Furthermore, Tate admitted that he had not reported the shooting to the police and that he told the officers about it only after the police began questioning him.

Williams testified in his own defense. He denied killing Cooper and said that on the night of the shooting, he was staying with a friend, Debra Towns. Towns corroborated Williams's story. Williams also testified that Tate had lied about the shooting because he was angry that Williams

refused to give him free drugs and money. On cross-examination, Williams reported that, on the evening before his own testimony, he confronted Tate and asked him why he lied on the stand. According to Williams, Tate responded, "They made me say that." Williams denied threatening to kill Tate and said that the bailiff heard their conversation that evening.

The State called the bailiff, Robert Haack, as a rebuttal witness. Haack testified that he had worked in the courtroom throughout the trial and that his responsibilities included "[s]ecurity within the courtroom, and other duties as assigned." He said that, the night before, while escorting Williams out of the courtroom, Williams saw Tate and started yelling at him. Haack put Williams in a room adjacent to Tate's, and the rooms, which were separated by a window pane, were locked. Haack said that he saw Tate "cowering in a corner, fearing for his life." Haack then testified that he briefly left this area of the building, and when he returned 15 minutes later, he heard Williams scream, "Angelo, you are dead." He said that he did not hear Williams and Tate discuss whether Tate had lied during his testimony.

On direct appeal Williams's appointed attorney filed a "no-merit report" and sought to withdraw under *Anders v. California*, 386 U.S. 738 (1967) and Wis. Stat. R. 809.32(1), because she could not discern a nonfrivolous basis for appeal. Williams filed a response, but the court agreed with counsel, and so affirmed the judgment and allowed counsel to withdraw. The court adopted counsel's report and supplemental report which analyzed, among other

potential arguments, Williams's contention that Haack's testimony violated his right to due process, but concluded that the trial court's decision to allow the testimony did not violate *Turner v. Louisiana*, 379 U.S. 466 (1965).

The Wisconsin Supreme Court denied Williams's petition for review, and Williams filed a petition for a writ of habeas corpus raising 21 grounds for relief. A magistrate judge, presiding by consent of both parties, denied the petition, but we granted a certificate of appealability on the issue whether Haack's testimony violated Williams's due-process right.

Our de novo review of the district court's judgment is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Julian v. Bartley*, 495 F.3d 487, 491-92 (7th Cir. 2007); *see also* 28 U.S.C. § 2254. A petitioner is entitled to a writ of habeas corpus only where a state court reaches a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2245(d)(1); *Simonson v. Hepp*, 549 F.3d 1101, 1105 (7th Cir. 2008). A decision is contrary to clearly established federal law where, as relevant here, a state court, confronted with facts materially indistinguishable from those previously before the Supreme Court, reaches a different result. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Corcoran v. Buss*, 551 F.3d 703, 708 (7th Cir. 2008). A state court unreasonably applies clearly established federal law if it identifies the appropriate standard, but unreasonably applies it to the facts. *See Williams*, 529 U.S. at 413; *Burr v. Pollard*, 546 F.3d 828, 831 (7th Cir. 2008). A

court's application of Supreme Court precedent is reasonable as long as it is "minimally consistent with the facts and circumstances of the case." *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)*; see also Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006).

Williams argues that the Wisconsin appellate court misapplied *Turner v. Louisiana*, 379 U.S. 466 (1965). The defendant in *Turner* was convicted by a jury of murdering his victim during a robbery. 379 U.S. at 466. The two key witnesses at Turner's trial were the deputy sheriffs who investigated the crime. *Id*. at 467. They testified about their investigation and Turner's confession. *Id*. During the three-day trial, the members of the jury were sequestered, and various deputy sheriffs—including the two star witnesses—accompanied the jurors everywhere they went. *Id*. at 467-68. The deputies ate with the jurors, had conversations with them, and ran errands for them. *Id*. at 468. The Supreme Court held that the deputies' testimony subverted the basic guarantees of trial by jury. *Id*. at 473. The Court based its analysis on two factors: the nature of the deputies' testimony and the association between the jurors and the deputies. First, the Court noted that the deputies' testimony "was not confined to some uncontroverted or merely formal aspect of the case for the prosecution." *Id*. In contrast, "the credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined" Turner's guilt. *Id*. And second, the Court found significant that the deputies' interaction with the jurors was not merely "a brief encounter," but rather was "a continuous and intimate association throughout a three-day trial." *Id*. The

Court concluded that the deputies' relationship with the jury "could not but foster the jurors' confidence," which violated due process because "Turner's fate depended upon how much confidence the jury placed in these two witnesses." *Id*. at 474.

We turn first to Williams's assertion that the decision of the Wisconsin state court is contrary to federal law and conclude that the facts of Williams's case are not "materially indistinguishable" from the facts before the Supreme Court in *Turner*. In *Turner*, the record showed substantial and detailed information about the bailiffs' significant interaction with the jury. In particular, the bailiffs ate with, transported, conversed with, and ran errands for the jurors who were sequestered—and thus entirely dependent on the bailiffs—during a three-day trial. The record here, however, is largely silent about the type and extent of Haack's interaction with the jury. Haack testified that he had been working in the courtroom throughout the trial. But, when asked about his duties during the trial, Haack made no mention of the jury and testified only that he performed "[s]ecurity within the courtroom, and other duties as assigned."

Furthermore, the bailiffs in *Turner*, testifying in their capacity as investigating officers, provided crucial testimony—including testimony about the defendant's confession—that directly showed his guilt. By contrast, Haack testified in rebuttal only after Williams mentioned that Haack saw an interaction between Williams and one of the State's key witnesses. Moreover, Haack's testimony involved his observations about Williams's behavior

during trial and did not go to whether Williams murdered Cooper.

Williams also urges us to compare his case to *Gonzales v. Beto*, 405 U.S. 1052 (1972). In *Gonzales* the Supreme Court, in a memorandum decision citing *Turner*, summarily reversed the judgment upholding the defendant's conviction where a bailiff testified as the prosecution's key witness. *Gonzales*, 405 U.S. at 1052-53. Williams relies on the reasoning in Justice Stewart's concurring opinion. But Justice Stewart's opinion was joined by only two other justices, *id*. at 1052, while two justices dissented, *id*. at 1056, and the remaining four justices did not discuss their reasons for remanding the case. We cannot know on what grounds these four justices decided the case, therefore, *Gonzales* does not provide a statement of clearly established federal law for purposes of § 2254(d)(1). *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (explaining that "'the holdings, as opposed to the dicta'" of Supreme Court decisions make up "clearly established" law) (quoting *Williams*, 529 U.S. at 412); *Hubanks v. Frank*, 392 F.3d 926, 932 (7th Cir. 2004) (noting that dissenting and concurring opinions do not constitute "clearly established" law for purposes of § 2254(d)(1)); *cf. Marks v. United States*, 430 U.S. 188, 193 (1977) (explaining that, when a majority of the justices do not agree on a single rationale for deciding a case, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds") (internal quotation marks and citation omitted).

Nevertheless, Williams's situation differs markedly from that of the defendant in *Gonzales*. Like in *Turner*, but

unlike this case, there was evidence that the bailiff in *Gonzales* had varied and close contacts with the jurors—he escorted them in and out of the courtroom, accompanied them to lunch, engaged in conversations with them, brought them drinks during their deliberations, and even stepped down from the witness stand during his testimony to escort them to the jury room. *Gonzales*, 405 U.S. at 1052-53. And, similar to the bailiffs in *Turner*, the bailiff in *Gonzales* was the State's key witness, and testified regarding his role—performed in his capacity as a deputy sheriff investigating the crime—in obtaining the defendant's confession. *Id*. at 1052.

Williams next argues that the Wisconsin appellate court unreasonably applied the rule laid out *Turner*. The Supreme Court has explained that "the official character of the bailiff—as an officer of the court as well as the State—beyond question carries great weight with a jury." *Parker v. Gladden*, 385 U.S. 363, 365 (1966). And Williams contends that *Turner* stands for the proposition that a defendant's due-process right is violated when a bailiff testifies for the State unless "the bailiff's contact with the jury is brief or the bailiff's testimony relates only to a formal or undisputed aspect of the trial." We agree with Williams that this reading of *Turner* is plausible, and might even be correct, but the state court's more limited interpretation is also reasonable.

First, Williams contends that the court misapplied *Turner* because it concluded that the level of interaction between Haack and the jurors was insufficient to raise due-process concerns. Williams argues that the court should

have concluded that, as bailiff, Haack "maintained a continuous association with the jury," and that, even if Haack's association with the jurors was not "continuous," it was more than *de minimis*, which, he contends, is all *Turner* requires. As evidence of the extent of Haack's association with the jurors, Williams cites only Haack's testimony that he was present in the courtroom through-out the trial and was in charge of security and other duties that he was instructed to perform. Nevertheless, Williams urges the court to conclude that because Haack was present through trial, his interactions with the jury while performing his "routine duties" were significant enough to raise a constitutional issue under *Turner*.

This is one possible interpretation of *Turner*. But the state court's reasoning—that *Turner* requires "substantial contacts" between the testifying bailiff and the jurors, and that the record contained no evidence of this level of interaction—is also reasonable. The Court in *Turner* explained, "We deal here not with a brief encounter, but with a continuous and intimate association" between the testifying bailiffs and the jurors. *Turner*, 379 U.S. at 473; *see also Gonzales*, 405 U.S. at 1056 (observing that the bailiff's "extended" association with the jurors was more than *de minimis*). The Court did not say how many or what types of associations would trigger due-process concerns, but it relied on evidence of the extensive interactions among the testifying bailiffs and the jurors. *See Turner*, 379 U.S. at 467-68. *Turner* does not address the case where, as here, there is little evidence of the bailiff's actual contacts with the jurors or even where the bailiff performs only his routine duties. Thus, the concern underlying the decision

in *Turner*—that the jurors' close relationship with the bailiff might unduly put a thumb on the prosecution's side of the scale—is not present here. *Turner* lends itself to a range of reasonable interpretations, including the one adopted by the Wisconsin appellate court.

In support of his argument, Williams calls our attention to *Agnew v. Leibach*, 250 F.3d 1123 (7th Cir. 2001). In that case, like this one, the record did not reveal the extent of the relationship between the testifying bailiff and the jurors. *Agnew*, 250 F.3d at 1132. We nonetheless concluded that the relationship "was not a chance encounter on an elevator but was a continuous association," which was "enough to infect the proceedings with extreme prejudice even in the course of a one-day trial." *Id*. *Agnew*, however, was decided under the law for reviewing habeas-corpus petitions in place before AEDPA, when the federal courts "disregarded the state court's legal conclusions and reached independent judgments on the issues presented to them." *Id*. at 1128. Williams filed his petition after AEDPA went into effect. Thus, the pertinent question here is not whether we disagree with the state court's interpretation of Supreme Court precedent, but rather whether the state court's application of the precedent was unreasonable. *See Lockyer*, 538 U.S. at 75-76; *Schaff*, 190 F.3d at 522.

Under AEDPA, decisions of courts of appeal, while not controlling on what constitutes "clearly established federal law," *see Schaff*, 190 F.3d at 522; *Yancey v. Gilmore*, 113 F.3d 104, 106 (7th Cir. 1997), are instructive on whether a particular application of federal law is reasonable, *see*

*Abu-Jamal v. Horn*, 520 F.3d 272, 312 (3d Cir. 2008); *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007); *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003). The interpretation that we adopted in *Agnew*, however, is not the only reasonable interpretation. *See Serrano v. Fischer*, 412 F.3d 292, 299 n.3 (2d Cir. 2005) (noting that state courts may come up with reasonable interpretations of Supreme Court precedent that differ from those of federal courts of appeal). And, for the reasons we provided above, the Wisconsin appellate court's decision that Haack's interaction with the jurors was not substantial enough to raise due-process concerns was reasonable.

Moreover, the state court did not unreasonably apply the second prong of the *Turner* analysis. Williams argues that to meet *Turner*'s second prong, he needed to establish only that the bailiff testified to disputed issues that were more than mere formalities. To support his contention, Williams points to the Court's statement in *Turner* that the testimony of the bailiffs "was not confined to some uncontroverted or merely formal aspect of the case for the prosecution," *Turner*, 379 U.S. at 473, and notes that the subject of Haack's testimony—whether Williams threatened to kill Tate—was a disputed issue at trial, that Haack's testimony could have convinced the jury that Williams had the propensity to commit murder, and that Haack's testimony undermined Williams's credibility.

But, again, this is not the only reasonable way to interpret *Turner*. The testifying bailiffs in *Turner* were the officers who investigated the crime as well as the principal witnesses on the issue of the defendant's guilt. *See Turner*,

379 U.S. at 467, 473. The Court recognized that "the credibility which the jury attached" to their testimony "must inevitably have determined whether" the defendant was guilty. *Id.* at 473. The Wisconsin appellate court found this reasoning persuasive and noted that unlike the officers in *Turner*, "Haack was not an eyewitness or an investigating officer and testified to a peripheral matter." To be sure, Haack's testimony might have damaged Williams's credibility and was more than a formality, but the Wisconsin appellate court's decision to read *Turner* narrowly to apply to cases where the bailiff testifies only to matters directly probative of the defendant's guilt was "at least minimally consistent with the facts and circumstances" of *Turner*. *Schaff*, 190 F.3d 513; *see also Gonzales*, 405 U.S. at 1503 (finding due-process violation where testifying bailiff was "the key prosecution witness" and the case turned "largely" on the jurors' assessment of the bailiff's credibility); *Agnew*, 250 F.3d at 1135 (reversing denial of habeas-corpus petition where bailiff's testimony regarding defendant's admissions "constituted substantive evidence" of the defendant's guilt).

We therefore AFFIRM the judgment of the district court.