ORIGINAL

**944-15**

IN THE COURT OF CRIMINAL
APPEALS OF TEXAS
AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS
OCT 02 2015
Abel Acosta, Clerk

PD-0944-15

EZEKIEL WIGGINS
(Petitioner)

FILED IN
COURT OF CRIMINAL APPEALS
OCT 0 9 2015
Abel Acosta, Clerk

V.S.

THE STATE OF TEXAS
(Respondent)

TRIAL CAUSE # 51,027C / 02-13-00216 CR IN THE
89th JUDICIAL DISTRICT COURT OF WICHITA
COUNTY, TEXAS

PETITION FOR DISCRETIONARY REVIEW

# TABLE OF CONTENTS

INDEX OF AUTHORITIES............... I

STATEMENT OF CASE.................... 1

STATEMENT OF PROCEDURAL HISTORY............... 1

GROUNDS FOR REVIEW............... 1, 2

ARGUMENTS............... 2, 3, 4

CONCLUSION AND PRAYER FOR RELIEF............... 4

NOTICE OF SERVICE............... 4

# INDEX OF AUTHORITIES

STATUES - TEXAS Code of Criminal Procedure Article 38.072............... 1, 2

CASE LAW - Zepeda v. State 773, SW 2d 730 (Tex. App-San Antonio 1989 pet ref'd)..... 3

Berger v. ~~State~~ United States, 295 U.S. 78, 88 (1935)............... 3

Wilson v. State, 938 S.W. 2d 57, 59 Tex Crim. Appl (1996)....... 3

Reporters Record - R.R. 4:23-29............... 2

R.R 4:28-59............... 2

R.R. 2:12-92............... 2

R.R. 2:85-92............... 2

R.R. 4:35-36............... 2, 3

R.R. 6:37-38............... 3, 4

R.R. 6:10-30............... 3

R.R. 4:49............... 3, 4

I

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

| | | |
|---|---|---|
| EZEKIEL WIGGINS | X | |
| Petitioner | X | |
| | X | |
| V.S. | X | PD-0944-15 |
| | X | |
| | X | |
| | X | |
| THE STATE OF TEXAS | X | |
| Respondent | X | |

## PETITION FOR DISCRETIONARY REVIEW

### TO THE HONORABLE COURT OF CRIMINAL APPEALS

Now comes Ezekiel Wiggins, petitioner in the above referenced, respectfully moves this court, with a Petition For Discretionary Review, pursuant to 44.25 V.A.A. C.P. Petitioner would show this honorable court that he is entitled for review due to the court of Appeals' opinion being contrary to the following:

(A) The trial court erred in allowing Tracy Anderson to testify as to the "outcry" statement made to her by alleged victim, because statement did not describe offense alleged in indictment as required By Texas code of criminal Procedure Art. 38.072

(B) The states misleading and untruthful statement made during closing arguments was a prosecutorial misconduct and violated Appellants right to a fair trial pursuant to the 14th amendment

(C) The trial court erred in overruling Appellants objection to the prosecutors misleading and untruthful statements during closing arguments.

## STATEMENT OF THE CASE

The facts of this case have already been given to the Court in the opinion from the Court of Appeals.

This is an appeal from a judgement of the 89th Judicial District Court of Wichita County, Texas. A jury convicted the petitioner, Ezekiel Wiggins, of Indecency with a child by contact, and sentenced him to life in the Texas Department of Criminal Justice.

Petitioner filed a timely notice of appeal, and on April 30, 2015 the COURT OF Appeals for the second District, affirmed Petitioners conviction. Petitioner has submitted a ground that the trial court erred in allowing Tracy Anderson to testify to the "outcry" statement made to her by alleged victim, because statement did not describe offense alleged in indictment, as required by Texas Code of Criminal Procedure Art. 38.072.

Also a ground that the State's misleading and untruthful statement argu during closing arguments was a prosecutorial misconduct and violated Appellant's right to a fair trial pursuant to a fair the 14th Amendment. And a ground that the court erred in overruling Appellants Objection to the prosecutor's misleading and untruthful statements during closing arguments.

## STATEMENT OF PROCEDURAL History

DATE: April 30, 2015 is the date the COURT OF APPEALS delivered their opinion.

## GROUNDS FOR REVIEW

① Trial court erred in allowing Tracy Anderson to testify as to the "outcry" statement made to her by alleged victim, because statement did not describe offense alleged in indictment as required by Texas Code of Criminal Procedure Art. 38.072.

② The States misleading and untruthful statement during closing arguments, was a prosecutorial misconduct and violated Appellants right to a fair trial pursuant to the 14ᵗʰ Amendment.

③ The trial court erred in overruling Appellants objection to the prosecutor's misleading and untruthful statements during closing arguments.

## ARGUMENTS

① The trial court erred in allowing Tracy Anderson to testify as to the "outcry" statement made to her by alleged victim, because statement did not describe offense alleged in indictment, as required by Texas Code of Criminal Procedure Article 38.072. The first witness called by the state at the trial of this case was C.P.S. investigator Tracy Anderson (R.R 4:23-29) Ms. Anderson was called to testify about the "outcry" statement made by alleged victim on may 12, 2006. (R.R. 4:28-59) A pretrial hearing was held to determine the admissability of the alleged victims statement (R.R. 2:12-92), and Appellant objected on various grounds to the admissability of outcry statement to Tracy Anderson (R.R. 2:85-92). Petitioner was indicted for Aggravated Sexual assault, which specifically states "penetration of female sexual organ with my/his finger of a child under age 14." Petitioner went to trial because of this allegation, and was convicted. Ms. Shannon may was given a statement by alleged victim of "penetration," in a discernible manner, with discernible details on the date of January 26, 2011. Ms. Shannon may should have been the designated "outcry witness" of this trial, simply because victims statements were detailed and coincides with the indictment of Aggravated Sexual Assault. Section 2 of Article 38.072 of the Texas Code of Criminal Procedure States that this article applies only to statements that describe the alleged offense.

② The States misleading and untruthful statement during closing arguments was a prosecutorial misconduct and violated Appellants right to a fair trial pursuant to the 14ᵗʰ amendment. The prosecutor was untruthful about the testimony of her own witness (R.R. 4:35-36). In her closing argument the state tried to minimize this argument by stating the "unable to determine ruling" was not about whether abuse occured, but about whether victims mother was good enough to keep victim in her

2

possession (R.R. 6:10-30). The State called C.P.S. investigator Tracy Anderson to testify, and was asked the outcome of her investigation (RR. 4:35-36). Ms. Anderson replied the ruling to be "unable to determine", because of disclosure of being touched on top of clothes. Ms. Anderson stated all rulings are based on a preponderance of the evidence, which is different from reasonable doubt. (R.R. 4:49). Tracy Anderson, the states own witness, testified her ruling was specifically about whether there was reason to believe that sexual abuse happened, unable to determine it happened, or rule out sexual abuse happened. (R.R. 4:35-X) The state through its misleading, untruthful, and disingenious argument was trying to minimize that C.P.S. did not find reason to believe allegations in 2006, but instead found that they were unable to determine if victims sexual abuse allegations were true or not. The State argued contrary to the testimony of its own witness (R.R. 4:35-36). Tracy Anderson clearly testified about her ruling (R.R. 4:35-36). The states argument was not made in good faith. In Zepeda v. State, 773 S.W. 2d 730 (Tex.App-San Antonio, 1989, pet ref'd) Denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. Each case stands upon its own peculiar facts and circumstances as to whether a defendant has been afforded a fair trial. It is the primary duty of all prosecutors not to convict, but to see that justice is done. The State may strike hard blows, but not foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. See Berger v. United States, 295 U.S. 78, 88 (1935) in which the supreme court set out this duty. Alternatively, improper jury argument is reversible error when it: 1) violates a statute 2) injects new and harmful facts into the case, or 3) is manifestly improper, harmful, and prejudicial to the rights of the accused. Wilson v. State, 938 S.W. 2d 57, 59 Tex. crim App (1996) The prosecutor's misleading and untruthful closing argument was manifestly improper, harmful and prejudicial to the rights of Appellant.

③ The trial court erred in overruling Appellants objection to the prosecutors misleading and untruthful statement during closing argument. The prosecutor tried to mislead the jury about what the "unable to determine" ruling was. The prosecutor stated ms. Andersons ruling meant, "They were unable to determine if mom was a good enough mom to keep her daughter." (C.P.S) (R.R. 6:37-38) Tracy Anderson specifically testified the unable to determine ruling was about sexual abuse happening, not happening, or unable to determine sexual abuse happened. (R.R. 4:35-36) Petitioners attorney Mark H. Barber made

3

on objection saying, "it's in contrast to the testimony of Tracy Anderson, to what she said. It's absolutely false, judge. I object to it. (R.R. 6:37-38) Ms. Jones: Your honor, it's a reasonable deduction from the evidence. The Court: Yeah, that's overruled. (R.R. 6:37-38)

Tracy Anderson clearly testified that her ruling was about evaluating the evidence and making a determination based on a preponderance of the evidence standard of sexual abuse. (R.R. 4:49)

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons herein, and upon the authority herein, the Appellant, EZEKIEL WIGGINS, has presented three independent grounds for relief, and of which if sustained, would request this honorable court reverse its judgement, for a New trial or acquittal acquittal.

Therefore petitioner, given an opportunity to demonstrate harm as a result of the trial courts errors, pray that relief be granted, or the judgement of the courts reversed, and petitioner is remanded back to the custody of the sheriff of Wichita county, Texas to answer indictment against him.

## NOTICE OF SERVICE

This is to certify that a true and correct copy of Petition for Discretionary Review was mailed to the following parties listed below, by placing it in the mailbox of the W.G. McConnell unit: The court of the criminal Appeals P.O. Box 12308 Capitol Station Austin, Tx 78711

Ezekiel Wiggins - Petitioner

#1873308

William G. McConnell unit

3001 S. Emily Dr.

Beeville, Tx 78102

4



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00216-CR

EZEKIEL GABRIEL WIGGINS                    APPELLANT

V.

THE STATE OF TEXAS                              STATE

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 51,027-C

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Ezekiel Gabriel Wiggins appeals his conviction for indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). In six issues, Wiggins argues that the trial court abused its discretion regarding its determination of who was the proper outcry witness to testify at trial and that the

----

[1]*See* Tex. R. App. P. 47.4.

trial court committed reversible error by overruling his objection to a portion of the State's closing argument. We will affirm.

## II. BACKGROUND

"Monique," the pseudonym used by the trial court for the complainant in this case, was eight years old and in the third grade at the time the alleged offense occurred. At a pretrial outcry hearing, Delores Beard-Diseker testified that she was Monique's music teacher. Delores said that she became involved in this case after she helped conduct a "sex education for children" class that focused on the difference between "good" and "bad" touch by adults toward children, and that Monique was one of the students who attended. According to Delores, after the class ended, Monique approached her and stated that she knew what a "bad touch" was. After consulting with the school counselor and principal on who she should report this statement to, Delores contacted Child Protective Services ("CPS") and reported what Monique had said. Delores testified that on this day, Monique's only comment was that she knew what a "bad touch" was, but that later in the week, Monique told her that her mother ("Mother") had told her that she had "made a mistake and nothing happened" and that Monique should not have told Delores that she knew what a "bad touch" was.

Tracey Anderson, a CPS employee, interviewed Monique within twenty-four hours of Delores's report. On direct, according to Anderson, Monique did

2

not disclose details of the alleged "bad touch" other than to say that it occurred "[i]n her bedroom when she was sleeping, when it was dark outside."

During cross-examination, however, Anderson averred that CPS had two reports regarding Monique that spanned two different days which had been "merged" into one report and that the report stated that whomever reported Monique's complaint to CPS reported that Monique had said that someone touched her "in a private place"; that Mother had been contacted; and that Monique later "changed her story to [the alleged event] being a dream." The report also stated that "[t]he suspected sexual abuse apparently took place during Thanksgiving"; that when questioned, Monique said that "someone" had "secret touched her"; and that it was not a relative that had done so, rather, someone who lived nearby. The report also indicated that Monique had told Mother and that Mother told Monique that she would sleep in her room with her.

On re-direct, Anderson said that, despite the report, she did not know what questions other investigators may have asked Monique, nor did she know what statements Monique had made that led to CPS being contacted. Anderson also said that the report could also contain information that was not initially reported but instead, some of the information could have come from CPS's later investigation into the initial report. Through questioning, Anderson illuminated her point by explaining that information gleaned from Monique's mother was also in the report and such information would not have come from the person who initially reported the suspected abuse. She also showed the trial court that

3

Wiggins's name was in the report, despite the fact that the person who initially reported the alleged abuse did not know his name.

But during re-cross, Anderson indicated that the report accurately portrayed the details of the alleged abuse by whoever reported it to CPS, including Monique's knowledge of "secret touch"; that she had been touched by a man who lived or worked nearby; and that she had told Mother and that Mother told Monique that she would sleep in her room with her.

After reviewing her un-redacted CPS file, however, Anderson changed her testimony again and testified that the report contained information that was gathered by one CPS employee who had spoken with another CPS employee and not the person who originally reported the alleged abuse. Ultimately, according to Anderson, the report contained much more information than what had been originally reported.

Anderson further testified that Monique knew the difference between the truth and a lie; that Monique had told her that one of Mother's friends had touched her "on the . . . middle part with his hand on top of her clothes"; that it happened in Monique's room while she slept; that Monique could not remember when it happened but that it happened "when it was dark outside"; and that she did not know the man's name. Monique denied that anyone else had ever touched her inappropriately. Anderson testified that during a second interview, Monique denied that anyone had ever touched her inappropriately.

4

Mother initially testified that she first learned of the alleged abuse when the school contacted her and reported that Monique had told a teacher and the school counselor that "something" bad happened. By Mother's initial account, Monique did not go into detail about what had happened because Mother had not pushed her for information and wanted Monique to "come around to telling [her] what had happened." Mother averred that Monique "was scared" to tell her what had happened.

Mother's testimony, however, changed during her time on the stand, and it seems as though Mother was confused by both the State's and defense counsel's questioning. At one point in her testimony, Mother averred that she knew many details prior to CPS's involvement, but at other times, Mother stated that she knew very little. Mother also seemed to be confused on whether she was being questioned about what she knew had allegedly happened to Monique versus what transpired when Wiggins allegedly assaulted Mother, which, by Mother's testimony, resulted in Monique going to the hospital. Mother's most common response to questioning by both the State and defense counsel was that she could not remember when she learned specific details about the alleged sexual abuse of Monique.

Monique also testified at the outcry hearing. Monique testified that the first person she told about the events that led to this case was a school counselor and another "woman." Monique testified that all she told the school counselor was "something bad happened." She did not elaborate on what she had told the

5

"woman" other than to affirm that she had not gone into any detail. She averred that after she had told the school counselor something "general," the next person that she spoke to about the events was "[t]he lady from that CPS place." According to Monique, the first person over the age of eighteen that she told details to about "what happened" to her was "the CPS lady." Monique said that she had never been to the hospital in relation to her outcry.

On cross, Monique said that the day she spoke to the counselor was the same day her mother came to school and also spoke with the counselor. Monique said that the initial meeting between the three did not last long and that while Mother was present, she denied anything had happened and said that it was just "a dream." By Monique's account, she and Mother later met again with the school counselor, but the second meeting happened after she had spoken with CPS. Monique said that she never spoke to the police about the alleged event.

Despite the State's notice to the contrary, a CPS worker named Shannon May did not testify at the outcry hearing. And despite that the notice reads that Monique had spoken to May in great detail about the alleged event leading to this case, the trial court ruled that Anderson was the proper outcry witness to testify at trial.[2]

---

[2]In his brief, Wiggins alleges that Monique's statement to May occurred several years after her statement made to Anderson.

6

After a jury heard the evidence, including Anderson's testimony regarding what Monique had told her, the trial court granted Wiggins's motion for directed verdict on the indicted charge of aggravated sexual assault and submitted to the jury the lesser-included offense of indecency with a child. The jury found Wiggins guilty, and he pleaded true to the State's enhancement paragraph. The jury assessed punishment at life imprisonment. The trial court entered judgment accordingly, and this appeal followed.

## III. DISCUSSION

Wiggins's first four issues involve the trial court's determination that Anderson was the proper outcry witness to testify at trial. Thus, we begin with a brief summary of the law regarding the outcry witness exception to hearsay, and then we address these issues in turn.

### A. The Outcry Witness Exception

Hearsay is generally inadmissible. Tex. R. Evid. 802. But article 38.072 of the Texas Code of Criminal Procedure provides that an outcry statement is not inadmissible on the basis that it is hearsay if, in relevant part, (1) the statement describes a sexual assault offense that a defendant committed against a child younger than fourteen years of age; (2) the statement was made by the child to the first person who was eighteen years old or older, other than the defendant, that the child spoke to about the offense; and (3) the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." Tex. Code

7

Crim. Proc. Ann. art. 38.072, §§ 1(1), 2 (West Supp. 2014); *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011); *West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd). Outcry testimony admitted in compliance with article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.).

A trial court's decision that an outcry statement is reliable and admissible under article 38.072 will not be disturbed absent a clear abuse of discretion. *Duran*, 163 S.W.3d at 257; *see Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court abuses its discretion by admitting a statement under article 38.072 only when the court's decision falls outside of the zone of reasonable disagreement. *Bautista v. State*, 189 S.W.3d 365, 367 (Tex. App.— Fort Worth 2006, pet. ref'd).

## B.    The Offense Charged

In his first issue, Wiggins argues that the trial court abused its discretion by allowing Anderson to testify as an outcry witness because, according to Wiggins, Monique's statement to Anderson did not describe the offense charged in the indictment, aggravated sexual assault—a charge that the trial court granted a directed verdict of "not guilty" on. The State argues that Wiggins's argument on appeal does not comport with an objection he made at trial. We agree with the State.

8

Wiggins does not point to a specific objection in the record where it can be determined that he made an objection that Monique did not describe an aggravated sexual assault. Instead, Wiggins points this court to several pages in the record and simply states multiple times in his brief that he made "various objections" to the admissibility of Anderson's testimony. See *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995) ("As an appellate court, it is not our task to pore through hundreds of pages of record in an attempt to verify an appellant's claims."). Having read the several pages in the record that Wiggins points this court to, we do not find an objection to Anderson's testimony such that Monique did not describe an aggravated sexual assault. This court can only find objections by Wiggins that Anderson was not the first person that Monique described an alleged offense to and that Anderson's testimony was not reliable; thus, the complaint being raised on appeal is not the same as the complaint asserted at trial, and we overrule Wiggins's first issue because he did not preserve this issue at the trial court level. See Tex. R. App. P. 33.1(a)(1); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

## C. Monique Did Not Name Wiggins as the Alleged Assailant

In his second issue, Wiggins argues that the trial court abused its discretion by allowing Anderson to testify as an outcry witness because Monique's statement to Anderson does not describe Wiggins as the perpetrator.

The State argues that Wiggins fails to cite to any authority that stands for the proposition that a complainant must have expressed who the perpetrator was in order for the outcry witness exception to apply and that neither the outcry witness statute nor any cases interpreting the statute stand for this proposition. *See generally* Tex. Code Crim. Proc. Ann. art. 38.072; *see also West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd) ("Because of the way in which the statute is written, an outcry witness is not person-specific, but event-specific.").

We agree with the State and overrule Wiggins's second issue as inadequately briefed. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000) ("In failing to provide any relevant authority suggesting how the judge's actions violated any of appellant's constitutional rights, we find the issue to be inadequately briefed."), *cert. denied*, 532 U.S. 1053 (2001); *see also McKenzie v. State*, No. 02-02-00195-CR, 2003 WL 21513625, at *2 (Tex. App.—Fort Worth July 3, 2003, pet. ref'd) (mem. op., not designated for publication) (overruling two issues as inadequately briefed for failure to discuss any authority in support of issues).

### D.    Anderson as the Proper Outcry Witness

In his third issue, Wiggins argues that the trial court abused its discretion by allowing Anderson to testify as an outcry witness because, according to

10

Wiggins, Monique "disclosed sexual abuse in detail to another adult before she was interviewed by [] Anderson." It appears that Wiggins is making the argument that the proper outcry witness should have been one of two different people other than Anderson—the school counselor or May, a CPS worker whom Monique described the event to in more detail several years after the alleged event.

As to May, it appears that Wiggins is attempting to argue that because Monique had described the alleged offense in more detail to May than to Anderson, the trial court abused its discretion in finding Anderson the proper outcry witness. But the proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense. *Reed v. State*, 974 S.W.2d 838, 841–42 (Tex. App.—San Antonio 1998, pet. ref'd). Rather, article 38.072 contemplates allowing the first person to whom the child described the offense in some discernible manner to testify about the statements the child made. *Garcia*, 792 S.W.2d at 91; *see Reed*, 974 S.W.2d at 841 (rejecting contention that CPS worker should have been designated outcry witness because victims' statements to her were "more detailed").

Here, Monique described to Anderson that she had been touched on her "middle part" "in her bedroom when she was sleeping, when it was dark outside." It has been consistently held that the proper outcry witness is the adult to whom the complainant first tells "how, when, and where" she was assaulted. *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd); *Reed*, 974

11

S.W.2d at 841–42. We hold that Monique described the "how, when, and where" in her statement to Anderson, which was made several years before she told May a more detailed recollection. Therefore, we conclude that the trial court, who is given broad discretion in determining the proper outcry witness, did not abuse its discretion by finding that Anderson was the proper outcry witness rather than May. *Garcia*, 792 S.W.2d at 90–91. Thus, we overrule this portion of Wiggins's third issue.

As to Mother, Wiggins's argument can be boiled down to his contention that the trial court should have believed Mother's vacillating testimony over that of Monique's consistent testimony. Indeed, although Mother's testimony appears to change throughout, Monique specifically and consistently testified that Anderson was the first person she told what had happened to her in "detail" and, despite Wiggins's contentions, her testimony never wavered from this position. This testimony is consistent with Anderson's testimony that Monique told her that she had been touched on her "middle part" "in her bedroom when she was sleeping, when it was dark outside."

It is within a trial court's discretion to judge the credibility of the testimony and witnesses' demeanors in deciding who the proper outcry witness is. *See Robinett v. State*, 383 S.W.3d 758, 762 (Tex. App.—Amarillo 2012, no pet.) ("Although one of the mothers gave inconsistent testimony at the pretrial hearing regarding the information the girls gave the deputy sheriff, the trial court could have believed, based on the testimony, that the girls did not tell the deputy sheriff

12

anything more than what they related to their mothers."). We thus cannot conclude that the trial court abused its discretion by finding that Monique's credibility trumped Mother's. *Garcia*, 792 S.W.2d at 91. We overrule the remainder of Wiggins's third issue.

### E. The Reliability of Anderson's Testimony

In his fourth issue, Wiggins argues that under the applicable court-created factors, the trial court abused its discretion by finding Anderson's testimony reliable. In turn, the State argues that when the applicable caselaw factors are applied to the trial court's decision in this case, its decision that Anderson's testimony was reliable is within the zone of reasonable disagreement and therefore the trial court did not abuse its discretion. We agree with the State.

Various courts have created a non-exclusive list of factors that tend to indicate reliability of an outcry statement. *See Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd); *Buckley v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd*, 786 S.W.2d 357 (Tex. Crim. App. 1990). This non-exclusive list includes: (1) whether the child victim testified at trial and admitted making the out-of-court statement; (2) whether the child understood the need to tell the truth and had the ability to observe, recollect, and narrate; (3) whether other evidence corroborated the statement; (4) whether the child made the statement spontaneously in her own terminology or whether evidence existed of prior prompting or manipulation by adults; (5) whether the child's statement was clear and unambiguous and rose to the needed level of certainty;

13

(6) whether the statement was consistent with other evidence; (7) whether the statement described an event that a child of the victim's age could not be expected to fabricate; (8) whether the child behaved abnormally after the contact; (9) whether the child had a motive to fabricate the statement; (10) whether the child expected punishment by reporting the conduct; and (11) whether the accused had the opportunity to commit the offense. *Norris*, 788 S.W.2d at 71 (*citing Buckley*, 758 S.W.2d at 343–45); *Woodruff v. State*, Nos. 02-11-00337-CR, 02-11-00338-CR, 02-11-00339-CR, 02-11-00340-CR, 02-11-00341-CR, 02-11-00342-CR, 02-11-00343-CR, 2012 WL 3041114, at *9 (Tex. App.—Fort Worth July 26, 2012, pet. ref'd) (mem. op., not designated for publication).

Here, several of these court-recognized indicia of reliability were present before the trial court when it found Anderson's testimony reliable. Monique testified at both the outcry hearing and at trial, admitting that she had made the out-of-court statement. There was no showing that Monique had any reason to fabricate the statement, as evidence at the outcry hearing demonstrated that Mother and Wiggins had already separated at the time Monique made her general comment to school employees and her statement to Anderson. Monique's outcry was made during a screening by CPS, and the screening was instigated due to Monique's telling a school employee that she knew what a "bad touch" was after a school assembly which addressed to children how to recognize the difference between what is proper touching by an adult to a child and what is not, demonstrating that the statement was made spontaneously.

14

And the statement was made in Monique's own vernacular. Indeed, Monique said that she had been touched "on the . . . middle part with his hand on top of her clothes." The spontaneity of Monique's statement said to the school employee, and then to Anderson, in her own terminology is indicative that her statement was not made under the prompting or manipulation by adults. Furthermore, Anderson testified that Monique understood the difference between the truth and a lie. Additionally, evidence introduced at the outcry hearing and at trial shows that Wiggins had the opportunity to commit the offense. While there was other evidence that Monique, at times outside the courtroom, recanted her statement and said that what allegedly occurred was just a dream, the evidence also included that Mother (who had a multi-year relationship with Wiggins) told her to say it did not happen.

Based on this record, we cannot conclude that the trial court abused its discretion by determining that Monique's statement to Anderson was a reliable outcry statement. *See Garcia*, 792 S.W.2d at 92; *see also Bautista*, 189 S.W.3d at 367. We overrule Wiggins's fourth issue.

## F. The State's Closing Argument

In his fifth and sixth issues, Wiggins argues that the trial court erred by overruling his objection to the State's closing argument and that this error violated his due-process rights. During the State's closing argument, the following colloquy occurred:

> [Prosecutor]: You know, [Anderson's] job, what she told you about, is to work for Child Protective Services. And [defense counsel]

15

wants you to believe because five years ago, she made an unable to determine after 45 days in a child abuse investigation that that should equate to a law enforcement investigation with the facts that we have now.

*And I want to submit to you, you know what Child Protective Services is about. It's about do these kids need to be taken away from their parents? Well, who was the parent here? The mom. Did this child need to be removed from the mom? No. The offender was already out of the picture. She was protective. So no further investigation needed to go on for CPS.* (Emphasis provided by this Court.)

**They're unable to determine whether mom was a good enough mom to keep her daughter**. (Emphasis provided by Wiggins.)

[Defense Counsel]: Judge, I object. That's--it's in contrast to the testimony of [Anderson] what she said. It's absolutely false, Judge. I object to it.

[Prosecutor]: Your honor, it's a reasonable deduction from the evidence.

[Trial Court]: Yeah, that's overruled.

Wiggins argues that the prosecutor's statement that "[CPS was] unable to determine whether mom was a good enough mom to keep her daughter" did not fall into any of the recognized categories of permissible closing argument because Anderson never testified that CPS's goal was to determine whether Mother was a fit parent. *See Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim. App. [Panel Op.] 1980) (discussing categories of permissible jury argument). But as can be seen from the State's argument that Wiggins has provided to this court in his brief, he did not object to the State's argument until the State had already made this argument for several sentences, including discussing Mother as a fit parent four times. Thus, Wiggins did not

16

contemporaneously object to this closing argument, and therefore he has forfeited any complaint on appeal about it. *See* Tex. R. App. P. 33.1(a); *see also Lovill v. State*, 319 S.W.3d 687, 692 (Tex. Crim. App. 2009) (holding that an objection is only timely if "made as soon as the ground for complaint is apparent or should be apparent."); *Taylor v. State*, 264 S.W.3d 914, 917 (Tex. App.—Fort Worth 2008, no pet.) ("Additionally, because the evidence [appellant] complains of came in elsewhere without objection, . . . he has also forfeited his complaints."). We overrule Wiggins's fifth and sixth issues.

## IV. CONCLUSION

Having overruled all six of Wiggins's issues on appeal, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 30, 2015

17