In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00196-CR
_____

CURTIS NATHANIEL BULLMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 128th District Court
Orange County, Texas
Trial Cause No. A-130,595-R

MEMORANDUM OPINION

In four issues, appellant, Curtis Nathaniel Bullman, challenges his conviction for continuous sexual abuse of a young child. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2015).[1] Bullman contends the trial court abused its discretion in admitting the following: (1) the testimony of an outcry witness; (2) evidence of

_____

[1] Although the Legislature amended section 21.02 of the Texas Penal Code after the commission of the alleged offense, we cite to the current version of the statute because the subsequent amendments do not affect the outcome of this appeal.

1

Bullman's extraneous offenses; (3) Facebook records; and (4) telephone recordings and transcripts. Because we overrule all of Bullman's issues on appeal, we affirm the judgment of the trial court.

## I. Background

The State indicted Bullman for continuous sexual abuse of a child. The State alleged that "from on or about June 3, 2011 through March 5, 2012" Bullman committed two or more acts of sexual abuse against E.D.[2], a child younger than fourteen years of age. The State specifically alleged that Bullman committed aggravated sexual assault against E.D. on or about June 3, 2011, November 1, 2011, and March 5, 2012.

Bullman pled not guilty to the charges against him and elected a trial by jury. At the conclusion of the trial, the jury found Bullman guilty of continuous sexual abuse of a young child and sentenced him to life imprisonment. Bullman filed a timely notice of appeal.

## II. Outcry Testimony

In his first issue, Bullman contends that the trial court abused its discretion by admitting testimony from E.D.'s mother (the "Mother") regarding E.D.'s outcry statement under article 38.072 of the Texas Code of Criminal Procedure. *See*

---

[2] To protect the victim's identity, we use an alias. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

*generally* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2015).[3] The trial court has broad discretion to determine whether a child's hearsay statement is admissible under article 38.072. *Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd). We will not disturb the trial court's ruling unless the record shows a clear abuse of discretion. *Id*.

## A. Untimely Notice

Bullman first argues that the Mother's outcry statement testimony was inadmissible because the State did not provide fourteen days' notice as required by section 2(b)(1) of article 38.072. *See generally* Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b)(1).

Hearsay statements are not admissible unless otherwise provided by the rules of evidence or by statute. Tex. R. Evid. 802. Article 38.072 of the Texas Code of Criminal Procedure creates a statutory exception to the rule against hearsay for statements of child-abuse victims when certain conditions are met. *See* Tex. Code Crim. Proc. Ann. art. 38.072. The exception provides that in sexual offense cases committed against a child, a statement that was made by the child to

---

[3] The Legislature amended article 38.072 of the Texas Code of Criminal Procedure after the commission of the alleged offense; however, we cite to the current version of the statute because the subsequent amendments do not affect the outcome of this appeal.

the first adult about the offense will not be inadmissible because of the hearsay rule. *Id*. art. 38.072, § 2(a), (b). However, for this hearsay exception to apply, the State must notify the defendant of its intention to offer such statement on or before the fourteenth day before trial begins. *Id*. art. 38.072, § 2(b)(1)(A). "The purpose of the notice requirement is to prevent the defendant from being surprised by the introduction of the outcry-hearsay testimony." *Gay v. State*, 981 S.W.2d 864, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *see also Fetterolf v. State*, 782 S.W.2d 927, 930 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd).

Bullman contends—and the State concedes—that the State did not provide fourteen days' written notice of its intent to call an outcry witness. The State filed its notice of intent to introduce the hearsay statement of a child abuse victim on March 27, 2014, the eleventh day before trial began. Bullman argues that the State's noncompliance with the notice provision should have prevented the State from using the article 38.072 hearsay exception. However, when notice is untimely, the admission of outcry testimony is harmless error if the defendant had actual notice of the identity of the outcry witness, the complainant testified and was subject to cross-examination, and the defendant did not show that the untimely notice impeded his defense. *See Fetterolf*, 782 S.W.2d at 930; *see also Upton v. State*, 894 S.W.2d 426, 429 (Tex. App.—Amarillo 1995, pet. ref'd) (holding

4

untimely notice was harmless error when appellant admitted he reviewed the State's file and learned the identity of two potential outcry witnesses, when appellant did not establish how his defense was impeded by the untimely notice, and when the complainant appeared as a witness, provided comparable testimony to the outcry witness, and was subjected to cross-examination).

During the article 38.072 hearing, the State argued it had an open file policy and that defense counsel had had an opportunity to review everything in the State's file, including the Mother's statement. Additionally, the prosecutor for the State informed the trial court that sometime before he filed the written notice, he had spoken with defense counsel and verbally informed her that the State was going to call the Mother as an outcry witness.

Bullman does not contest these facts, and defense counsel admitted at the hearing that she had reviewed the State's file. Moreover, fourteen days before trial, defense counsel filed a motion wherein she stated that she had reason to believe that the State planned to present the testimony of an outcry witness at trial. Twelve days before trial, during the pretrial motions hearing, defense counsel stated on the record that the State's intention to call an outcry witness to introduce E.D.'s outcry statement "should not be an issue[.]" After defense counsel made the statement, the trial court noted that it did not have the State's notice in the file. The State

5

responded that it thought it had already given notice but would file its notice that day.

At the article 38.072 hearing, the trial court asked defense counsel if she was surprised that the outcry witness was going to testify. Defense counsel responded that she was not surprised by the content of the outcry witness's statement, but she was surprised that the State actually planned to call the witness to testify because she had not received formal notice of the State's intent to call the witness. When asked if she would have changed her trial strategy had she received the notice a few days before, defense counsel responded that she "may" have changed her trial strategy.

Here, Bullman has failed to show that the State's untimely notice caused him harm. While Bullman contends he was surprised by the State's notice of intent to call an outcry witness, Bullman cannot reasonably argue he was actually surprised by the outcry evidence. As indicated above, defense counsel reviewed the State's file long before trial and within that file was the Mother's statement, which detailed E.D.'s outcry of sexual abuse. Additionally, the State responded that it had previously informed counsel of its intent to call an outcry witness. Defense counsel argued that she might have changed her defensive strategy if she had received proper notice, but she does not show how the lack of timely notice impeded

6

Bullman's defense. Also, E.D. testified and was subject to cross-examination regarding the statements she made to her mother. *See Hanson v. State*, 180 S.W.3d 726, 729-30 (Tex. App.—Waco 2005, no pet.).

Additionally, even if Bullman had shown surprise and prejudice in the admission of the Mother's testimony, any error would not be reversible error when the same evidence was subsequently admitted without objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). E.D. testified about Bullman's sexual abuse. She testified as to each incident of abuse identified by the Mother, and did so in greater detail. Under these facts, we conclude that harm has not been shown. *See* Tex. R. App. P. 44.2(b).

## B. Improper Scope of Testimony

Bullman also contends that the trial court was lenient in what it allowed to come in as part of the Mother's outcry statement testimony and, thus, the testimony was not proper. Bullman argues that the trial court should not have allowed the Mother to testify about incidents of sexual abuse that occurred prior to June 3, 2011, and about an incident of forced sexual intercourse that occurred on an unspecified date. Bullman's counsel objected during the article 38.072 hearing, but the trial court did not rule on Bullman's objection, and instead, instructed Bullman's counsel to present the objections during trial. Thus, Bullman failed to

7

obtain a definitive adverse ruling on this objection during the article 38.072 hearing. Furthermore, Bullman did not object to the Mother's testimony on this basis when the State sought to enter her testimony during trial. We conclude that Bullman failed to preserve his complaint for review. *See* Tex. R. App. P. 33.1(a).

We overrule Bullman's first issue.

### III. Extraneous Offense Testimony

In his second issue, Bullman contends that the trial court abused its discretion in allowing E.D. to testify regarding "events or alleged instances of abuse" that occurred outside of the time specified in the indictment. According to Bullman, the State offered the testimony only for the purpose of proving Bullman's character so as to show that he acted in conformity with that character, and he contends that none of the exceptions listed in Rule 404(b) of the Texas Rules of Evidence support the admissibility of the evidence.[4]

---

[4] For sexual-abuse cases involving children, article 38.37 of the Texas Code of Criminal Procedure provides that notwithstanding Rule of Evidence 404, "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." Tex. Code. Crim. Proc. Ann. art. 38.37, § 1(b) (West Supp. 2015). However, before this type of evidence may be admitted under article 38.37, the statute provides that "[t]he state shall give the defendant notice of the state's intent to introduce" the evidence in its case in chief "not later than the 30th day before the date of the defendant's trial. *Id.* art. 38.37, § 3. Article 38.37 further provides

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection stating the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context, and that the trial court ruled on the objection. Tex. R. App. P. 33.1. During a bench conference, Bullman objected "to any other extraneous offenses other than those stated in the Indictment[.]" Bullman expressly based his objection on Texas Rule of Evidence 403. He argued that although relevant, the extraneous offense evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. The trial court overruled Bullman's objection. Because Bullman failed to object to the evidence based on Rule 404, we conclude he has failed to preserve his complaint under Rule 404(b). *See* Tex. R. App. P. 33.1; *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (To

---

that the trial court must "conduct a hearing out of the presence of the jury" to determine whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt[.]" *Id.* art. 38.37, § 2-a. In this case, the record does not show that the State provided the requisite notice that it intended to introduce the evidence at issue under article 38.37 or that the trial court held a hearing before the evidence was admitted. For these reasons, we do not discuss the admissibility of the evidence under article 38.37.

preserve error for appellate review, "the point of error on appeal must comport with the objection made at trial.").[5]

Bullman did raise a Rule 403 objection, which we now consider. On appeal, Bullman specifically complains about the admissibility of the following testimony by E.D.: (1) Bullman began having vaginal intercourse with E.D. when she was nine years old; (2) Bullman continued having regular intercourse with E.D. until February 2013, eleven months after the last date alleged in the indictment; and (3) Bullman forced E.D. to have intercourse with him on an unspecified date, potentially outside the indictment period. Bullman contends the trial court should have excluded this evidence under Texas Rule of Evidence 403. He argues that the trial court failed to conduct a proper balancing test under Rule 403. The trial court is presumed to engage in the required balancing test under Rule 403 once a party objects on the ground of Rule 403 and the trial court rules on the objection, unless the record indicates otherwise. *See Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App.

---

[5] To the extent that Bullman's argument during the article 38.072 hearing could be construed as a Rule 404 objection to the admissibility of extraneous offense evidence offered during E.D.'s testimony, we reiterate that Bullman failed to obtain a ruling on his complaint, and, as such, failed to preserve error on that basis. *See* Tex. R. App. P. 33.1(a).

1997). The trial court is not required to *sua sponte* place the results of its balancing test on the record. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). The record before us does not affirmatively show the trial court refused to conduct the Rule 403 balancing test, it simply overruled Bullman's Rule 403 objection. We presume the trial court did engage in a balancing test before the court ruled on the objection.

Even if we assume that the trial court abused its discretion by admitting the extraneous offense testimony, we will not reverse the judgment if the error was harmless. *See* Tex. R. App. P. 44.2. We review error in admitting extraneous offense evidence as non-constitutional error. *See Casey v. State*, 215 S.W.3d 870, 884-85 (Tex. Crim. App. 2007). We will disregard non-constitutional error that does not affect a criminal defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). In our determination of whether error adversely affected the jury's decision, we consider everything in the record, including testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire. *Id*.

11

Regarding E.D.'s testimony that Bullman forced her to have sex, we note that E.D.'s mother testified as to the same occurrence without a Rule 403 objection. Additionally, Facebook records containing a conversation between E.D. and Bullman, wherein Bullman admits to the forced occurrence, were entered into the record without a Rule 403 objection. Both E.D. and her mother testified that Bullman sexually molested E.D. when she was eight years old without objection. Also, the recording and transcription of three telephone conversations between Bullman and E.D. were admitted without a Rule 403 objection. During one of the telephone conversations, evidence was presented to the jury that Bullman was having sex with E.D. when she was eight and nine years old. Thus, E.D.'s testimony was merely cumulative of other evidence admitted without a proper Rule 403 objection. *See Leday*, 983 S.W.2d at 718; *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see also Wilson*, 71 S.W.3d at 349. Accordingly, because evidence regarding these two extraneous offenses was admitted through other sources without a proper objection, we conclude any error potentially stemming from the admission of the evidence was harmless. *See* Tex. R. App. P. 44.2(b).

Concerning E.D.'s testimony that the abuse continued after the indictment period, we conclude that error, if any, did not have a substantial and injurious

12

effect or influence in determining the jury's verdict. E.D.'s testimony regarding the sexual abuse occurring after March 2013, was very general in nature and not as detailed or extensive as her testimony regarding the sexual abuse offenses covered in the indictment. Additionally, the State did not emphasize this evidence during the trial. The jury heard substantial evidence and argument concerning Bullman's sexual abuse of E.D. starting from age eight and continuing until she turned fourteen years old. We believe there is little risk that the jury would have convicted Bullman based on the evidence that he continued to sexually abuse E.D. after she turned fourteen, rather than the detailed and extensive evidence that was the basis of the State's indictment. *See* Tex. R. App. P. 44.2(b). Therefore, we hold that the error in admitting this evidence, if any, did not affect a substantial right of Bullman and must be disregarded.

We overrule Bullman's second issue.

## IV. Admissibility of Facebook Records

In his third issue, Bullman contends the trial court abused its discretion in admitting into evidence Facebook records from Bullman's Facebook account, which included various dialogues between Bullman and E.D. Bullman argues the Facebook records were not properly authenticated and contained inadmissible hearsay.

13

Like other types of evidence, electronically stored evidence must be properly authenticated. *See Tienda v. State*, 358 S.W.3d 633, 638-39 (Tex. Crim. App. 2012). Rule of Evidence 901(a) states that for the proponent of evidence to satisfy the authentication requirement, he must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). In a jury trial, after the trial court makes this threshold decision, the jury then has the role to ultimately determine whether an item of evidence is indeed what its proponent claims. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). We review the trial court's determination of the threshold requirement for an abuse of discretion and will not reverse its decision if it is within the zone of reasonable disagreement. *Id.*

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda*, 358 S.W.3d at 638. In *Tienda*, the Court of Criminal Appeals addressed the authentication of printouts from a social-networking website, namely MySpace. *Id*. at 638-47. Acknowledging that computers can be hacked, passwords compromised, and mobile phones stolen, the Court explained that evidence that "an email on its face purports to come from a certain person's email address, that the respondent in an internet chat room

14

dialogue purports to identify himself, or that a text message emanates from a cell phone number assigned to the purported author" is alone insufficient to support a finding of authenticity. *Id*. 641-42. However, after reviewing the content of the MySpace postings, the Court concluded there was sufficient circumstantial evidence to establish a prima facie case such that a reasonable juror could have found that the MySpace accounts were created and maintained by the defendant. *Id*. at 642. Later, in *Butler*, the Court explained that the trial court may consider the message's "'appearance, contents, substance, internal patterns, or other distinctive characteristics,' which considered in conjunction with other circumstances" to support a conclusion that a message emanated from the purported author. 459 S.W.3d at 602 (quoting Tex. R. Evid. 901(b)(4)).

The Austin Court of Appeals identified the two major authentication concerns specific to Facebook:

> First, because anyone can establish a fictitious profile under any name, the person viewing the profile has no way of knowing whether the profile is legitimate. Second, because a person may gain access to another person's account by obtaining the user's name and password, the person viewing communications on or from an account profile cannot be certain that the author is in fact the profile owner.

*Campbell v. State*, 382 S.W.3d 545, 550 (Tex. App.—Austin 2012, no pet.) (internal citations omitted). In *Campbell*, the defendant acknowledged having a Facebook account but denied sending the victim the Facebook messages at issue.

15

*Id*. at 551. And, the defendant argued that only he and the victim had access to his Facebook account. *Id*. The victim in the case identified the printouts as messages she received from the defendant, and she specifically denied that she sent the messages to herself through the defendant's account. *Id*. The victim also denied having the defendant's current Facebook password the day the messages were sent. *Id*. The court considered the content of the Facebook messages and found internal characteristics that linked the messages to the defendant as the author. *Id*. at 551-52. The court concluded that the State was not required to conclusively establish that the defendant authored the messages; rather, the State only had to present prima facie evidence such that a reasonable jury could have found that the Facebook messages were created by the defendant. *Id*. at 552-53. The court concluded such evidence was presented in *Campbell*, and determined the trial court did not err in overruling the defendant's authentication objection. *Id*. at 553.

In reviewing whether the evidence is sufficient to support the trial court's ruling, we note initially that the messages, on their face, purport to be messages sent from a Facebook account bearing the name "Curtis N Bullman" to an account bearing E.D.'s name.[6] While this fact, without more, is not sufficient to

---

[6] In his brief, Bullman notes that the trial court also admitted records from a Facebook account bearing the name "Stanley.doritos[.]" Bullman does not identify any content from this account that he alleges caused him harm. *See* Tex. R. App. P.

16

authenticate Bullman as the author of the messages, "when combined with other circumstantial evidence, the record may support a finding by a rational jury that the messages were authored and sent by" Bullman. *Id.* at 551. Therefore, we examine whether other evidence in the record supports the trial court's ruling as to the authenticity of the Facebook records.

E.D. testified that she communicated with Bullman through Facebook and that the messages she received during those communications stemmed from a Facebook account bearing the name, "Curtis N. Bullman[.]" E.D. recalled that Bullman sent her a friend request from this account in May 2013 after he left Texas. E.D. explained that she knew she was communicating with Bullman because of "the way he said things" and because he communicated things through Facebook that only she and Bullman would know. For example, E.D. testified that Bullman created a code and required E.D. to use the code during Facebook conversations to verify he was communicating with her. E.D. testified that

38.1(i). Our review of the record indicates that there are no Facebook messages between Bullman and E.D. from this account. Moreover, the only testimony in the record regarding this account is that there were no conversations between Bullman and E.D. from this Facebook account. To the extent Bullman's brief challenges the trial court's admission of these records, we conclude any error potentially stemming from the admission of the records from the "Stanley.doritos" Facebook account would be harmless. *See* Tex. R. App. P. 44.2(b).

17

Bullman used the code during the Facebook conversations at issue in this case, and as a result, she was certain she was communicating with Bullman.

A forensics investigator with the sheriff's office testified that he obtained the records from Facebook pursuant to a probable cause search warrant. The investigator identified the evidence he received from Facebook in its response to the search warrant. The investigator testified that the Facebook records reflect that Bullman's account was logged into in South Carolina and in Tennessee, but not in Orange County. There is evidence in the record that after leaving Texas, Bullman went to South Carolina and Tennessee. The investigator also testified that Facebook verified this was Bullman's account through his email address and phone number. An Orange County detective testified that they obtained the phone number for Bullman from which he had previously contacted E.D., that they used that phone number to contact Bullman, and that this number was the same phone number that Facebook indicated it used to verify the owner of the Facebook account.

During Bullman's testimony, he admitted that he started a Facebook account in May 2013. Bullman further admitted that he had had conversations with E.D. through Facebook two or three times. According to Bullman, he was drunk and high during these conversations, so he could not recall the content of the

18

conversations in full. Notably, Bullman did not deny having the Facebook conversations with E.D. as portrayed in the Facebook records. Bullman also admitted he had a code he used with E.D., and he asked E.D. for the code during the Facebook conversations to confirm he was communicating with E.D. In reviewing the content of the Facebook messages, we note that the messages are consistent with E.D. and Bullman's testimony that Bullman requested E.D. to provide him with a secret code, which E.D. was able to do.

Based on all of the circumstances reviewed above, we conclude that there was sufficient evidence such that a reasonable jury could have found that the Facebook messages at issue in this case were created by Bullman. Therefore, the trial court did not abuse its discretion in overruling Bullman's authentication objection and admitting the Facebook records into evidence for the jury to determine the ultimate question of authenticity.

With regard to Bullman's hearsay objection, Texas Rule of Evidence 801(e)(2)(A) "plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay." *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999); *see also Williams v. State*, 402 S.W.3d 425, 438 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). "A party's own statements are not hearsay and they are admissible on the logic that a party is

estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Trevino*, 991 S.W.2d at 853. Because the Facebook messages were posted by Bullman, the trial court properly overruled his hearsay objection as to his statements on Facebook.

Regarding Bullman's contention that E.D.'s statements were inadmissible hearsay, we disagree. E.D.'s statements were offered not for the truth of the matters asserted, but to give context to Bullman's statements and are thus not hearsay. *See McNeil v. State*, 452 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see also Gardner v. State*, No. 05-14-01063-CR, 2015 WL 6784270, at * 2 (Tex. App.—Dallas Nov. 6, 2015, no pet.) (mem. op., not designated for publication); *Hernandez v. State*, No. 01-08-00306-CR, 2009 WL 1331649, at *6-7 (Tex. App.—Houston [1st Dist.] May 14, 2009, pet. ref'd) (mem. op., not designated for publication).

We conclude the trial court did not abuse its discretion in overruling Bullman's hearsay objection. We overrule Bullman's third issue.

### V. Admissibility of Telephone Recordings

In his fourth issue, Bullman contends the trial court abused its discretion in admitting the recording and transcription of three telephone conversations between

Bullman and E.D. Bullman contends that the recording and transcripts containing the telephone conversations were replete with inadmissible hearsay.

As noted above, a party's own statements are not hearsay when offered against that party. Tex. R. Evid. 801(e)(2)(A). Bullman's statements on the recording and in the transcripts were his own statements that the State used against him; therefore, Bullman's statements are not hearsay and were admissible. *See Trevino*, 991 S.W.2d at 853; Tex. R. Evid. 801(e)(2)(A). And, contrary to Bullman's contention, E.D.'s statements were offered not for the truth of the matters asserted therein, but to give context to Bullman's statements and are thus not hearsay. *See McNeil*, 452 S.W.3d at 419. We overrule Bullman's fourth issue.

Having overruled all of Bullman's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 29, 2015
Opinion Delivered April 13, 2016
Do not publish

Before Kreger, Horton, and Johnson, JJ.